[No. 20648. In Bank. — October 25, 1890.]

# THE PEOPLE, RESPONDENT, *v.* TARM POI, APPELLANT.

CRIMINAL LAW — HOMICIDE — BURDEN OF PROOF — INSTRUCTION — REASONABLE DOUBT. — Upon a trial for murder, an instruction to the jury, taken *verbatim* from section 1105 of the Penal Code, that the burden of proving circumstances of mitigation or justification, after proof of the homicide, is on the defendant, is not erroneous, but should, in justice, be accompanied by what the Penal Code contains on the subject of reasonable doubt.

ID. — ALIBI — SELF-DEFENSE — PREPONDERANCE OF EVIDENCE — INSTRUCTION — ERROR WITHOUT PREJUDICE. — When there is no question of self-defense raised upon the facts of the case, but the defendant denies the killing, and seeks to prove that it was done by others, and that he was elsewhere at the time of the killing, an instruction implying that self-defense, grounded upon the fears of a reasonable man, must be proved by a preponderance of evidence cannot be prejudicially erroneous.

ID. — CONSTRUING INSTRUCTIONS TOGETHER — PREPONDERANCE OF EVIDENCE — REASONABLE DOUBT AS TO ALIBI. — When there is evidence tending to prove an *alibi*, a general statement in the charge, that the defendant may establish any fact essential to his defense by a mere preponderance of evidence, though objectionable by itself, is not prejudicially erroneous as applied to the defense of *alibi*, and could not be misleading, if the court specifically charged the jury that if, from the whole case, and a consideration of all the testimony, the evidence was sufficient to create a reasonable doubt as to whether the defendant was present at the time and place of the murder, he should be acquitted.

ID. — MISCONDUCT OF JURY — VIEW OF PREMISES — MOMENTARY SEPARATION OF JUROR — CONSENT OF DEFENDANT. — Where the accused joins with the prosecution in a request that the jury be permitted to view the various premises described in the evidence, and both parties consent that one of the jurors may pass over the roofs of certain buildings, the accused cannot object to the temporary separation of such juror from the remainder of the jurors, where it does not appear that any misconduct occurred during the separation, to the substantial injury of the accused, without his consent or knowledge.

ID. — IRREGULARITY — OBJECTION — WAIVER — REVIEW ON APPEAL. — Such separation is, at most, only an irregularity, which cannot be considered on appeal, unless objected to when the opportunity was offered.

ID. — AFFIDAVIT OF MISCONDUCT — INFORMATION AND BELIEF. — An affidavit of the misconduct of the jury, made merely upon information and belief, is insufficient.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

LXXXVI. CAL.—15

The facts are stated in the opinion of the court.[*]

*D. M. Delmas,* for Appellant.

*Attorney-General Johnson,* and *Frank M. Stone,* for Respondent.

McFARLAND, J. — The appellant was convicted of murder, and he appeals from the judgment, and from an order denying a new trial. He makes three points on the appeal, viz.: 1. That the trial court erred in instructing the jury; 2. Misconduct on the part of the jury; and 3. Insufficiency of the evidence to support the verdict.

1. The objection urged against the instructions is, that they require a preponderance of evidence on the part of a defendant in a criminal case, contrary to the rule laid down in *People* v. *Bushton,* 80 Cal. 160, and *People* v. *Elliott,* 80 Cal. 296. The instructions objected to, and which for convenience we will number 1, 2, and 3, are as follows: " 1. Upon trial for murder, the commission of the homicide by the defendant being proven to the satisfaction of the jury, or admitted, the burden of proving circumstances of mitigation, or that justify or excuse him, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounted to manslaughter, or that the defendant was justifiable or excusable. 2. If, from all the evidence, the jury should be satisfied, by a preponderance of testimony, that the circumstances were such as to excite the fears of a reasonable man, and that the defendant acted under the influence of those fears alone, or if he killed the aggressor to prevent the commission of a felony, he would not be criminally responsible for his death, although the circumstances might not be sufficient to prove, by a preponderance of evidence, that the aggressor was actually about to commit a felony. 3. In the determination of this case, you are further instructed

that, while the law requires the guilt of the defendant to be shown to your satisfaction, beyond a reasonable doubt, before you can convict, he may establish any fact essential to his defense by merely a preponderance of evidence."

The first instruction above quoted is taken *verbatim* from section 1105 of the Penal Code, and, of course, is not erroneous, although it should, in justice, be accompanied, as it was in the case at bar, by what the same code contains on the subject of reasonable doubt.

The second instruction is somewhat confused by the use of the word "if"; but it might, perhaps, be fatally erroneous if in this case, as in *People* v. *Bushton*, 80 Cal. 160, and kindred cases, the defendant had admitted the killing, and the question had been about "circumstances of mitigation, or that justify or excuse him." In the Bushton case, the killing was admitted, but defendant claimed that it was done accidentally; and section 1105 of the Penal Code was therefore applicable to the case. But the trial court in that case, in its charge to the jury, in addition to giving said section of the code, used strong and repeated expressions to the effect that "it devolves upon the defendant" to prove circumstances of mitigation, excuse, or justification "by a preponderance of evidence on his part," by "some stronger proof," etc. This language was held to be beyond the meaning of the code, and to be inconsistent with the rule that if the jury have a reasonable doubt of a defendant's guilt they should acquit.

*People* v. *Elliott*, 80 Cal. 296, was a similar case; that is, defendant admitted the killing, but claimed that it was justifiable. Now, in the case at bar, there were no facts which made section 1105 of the Penal Code, or the doctrine of the Bushton and Elliott cases applicable. In this case, the defendant did not set up any circumstances of mitigation or excuse or justification. He totally denied that he had anything to do with the kill-

ing of the deceased. He introduced witnesses who testified that they were present and saw the killing; that it was done by persons other than defendant; and that he was not present when the killing took place. He also testified himself, and introduced other witnesses who testified, that, at the time of the killing, he was at another place, in bed. It is clear, therefore, that the second instruction, — about "fears of a reasonable man," — whether correct or not, could not have injured the defendant.

The part of the third instruction which is objected to is this: "He may establish any fact essential to his defense by merely a preponderance of evidence." Of course this proposition in itself is true; it does not upon its face declare anything that is erroneous. It is apparently intended for the benefit of the defendant. But the objection made to it is, that the jury might infer from it the other proposition, that no evidence on the part of the defendant of a fact would be sufficient to raise a reasonable doubt of his guilt, unless he actually proved the fact by a preponderance of evidence. It is possible that the language objected to might have the alleged effect on a jury in some cases, when not accompanied by other qualiying instructions, and for this reason it had better be left out of charges to juries in criminal cases.

In the case at bar, however, the only effect that the instruction could have had was in relation to the fact of an *alibi*, which defendant attempted to prove. But, with respect to that fact, the court instructed the jury as follows: "Where evidence has been offered by the defendant for the purpose of proving an *alibi*, — that is to say, that the defendant was in another place at the time of the alleged act of murder, and was distant from the scene of the killing charged, at the time, and therefore could not have participated in it, — if, from the whole case, and a consideration of all the testimony, the evidence in

this behalf produced be sufficient to create a reasonable doubt as to whether the defendant was present at the time and place of the murder, he should be acquitted." This was certainly putting the law as favorably for defendant as he could reasonably demand, and taking the instruction last above quoted, and the one objected to, together, there was no danger of the jury being misled.

2. Alleged misconduct of the jury. The deceased was killed on the street, near the corner of Jackson and Dupont streets, in the city of San Francisco; and in the taking of the testimony in chief of the prosecution, a great many different localities, houses, etc., were mentioned. When the evidence for the prosecution in chief was closed, the prosecution and defense joined in a request to the court that the jury be allowed to visit and view the various places mentioned in the testimony, whereupon the court made an order for the viewing of about a dozen enumerated places. The deceased was attacked and killed about ten o'clock on the night of June 23, 1889, by two or three persons, who used hatchets, and perhaps other weapons; and a witness had testified that he saw the assault, that defendant was one of the assailants, and that immediately after the assault the defendant went up the stairway of a certain house designated as "No. 924 Dupont Street." The defendant was arrested about three hours afterwards, in a house on another street in that vicinity, called "Washington Alley," the house being designated as "No. 10 Washington Alley." And a witness (Wittman) had also sworn that he (the witness) had afterwards gone up the stairway of No. 924 Dupont, and, passing through a window, had gone on the roofs of the intervening houses and down into the house No. 10 Washington Alley. Now, the order above mentioned for viewing premises, made at the joint request of the parties, included "the premises No. 10 Washington Alley," and "also to ascend the stairway at No. 924 Dupont Street, and look out of

the window at the head of the stairs, look at the alley, and pass over the roof, if desired, to the place alleged to have been reached by Sergeant Wittman." When the order was made, one of the jurors, Mr. James Means, in open court, and before the jury started, asked permission to pass over the roofs from No. 924 Dupont to No. 10 Washington Alley. Counsel for the people said he " would not object "; and counsel for defendant stated that " he would be glad to have affiant [Means], or any other, or all, of the jury pass over the roofs, if they wished to attempt the passage, and expressly stated that on behalf of defendant he had no objection to affiant passing over the roofs, if he could." " The remainder of the jury, in open court, stated that no other members of the jury desired to attempt said passage on said roofs."

Means says in his affidavit, further, as follows: " That upon reaching said 924 Dupont Street, in conformity with said permission, affiant passed out of said window and over said roofs onto the roof of the building No. 10 Washington Alley; that the other jurors passed to No. 10 Washington Alley by way of the street, and met affiant where he had remained on the roof of said building No. 10 Washington Alley; that affiant was in full view of the balance of the jury, and of the judge of said court, while passing over said roofs; that he neither spoke to any one nor did any one speak to affiant from the moment he left the balance of said jury until he was again joined by the balance of the jury; that both defendant and his counsel, Mr. Lyman I. Mowry, were present during all the foregoing proceedings, and offered no objection to the said act of affiant."

And the passage of said juror, Means, over said roofs, under the circumstances as above stated, is relied on by appellant as misconduct for which the judgment should be reversed. The only substantial difference between the affidavit of Means and that of appellant, upon which

alone he rests this part of his case, is, that appellant says that during a part of the time when Means was on the roof he could not be seen by the other jurors. There is always necessarily some difficulty in keeping jurors closely together when viewing premises; and when a party requests that there be such a viewing he should not be heard afterwards to object, unless he can show that, without his consent or knowledge, there has been some misconduct in the proceeding which has caused him substantial injury. He should not be allowed to use it voluntarily as a means of entrapping the opposite party into mere abstract errors.

It is not necessary to determine whether the act of Means, had it been done against appellant's consent, would have constituted in law a "separation" of the jury. Neither does it appear that appellant was injured by the act. Appellant took the chances of injury or benefit. The juror might, as appellant may have expected, have become lost in the labyrinth of Chinese roofs. If appellant had not desired to have the juror make the attempt, he should have objected when the proposition was made, before the court left the court-room, or afterwards, before the juror commenced the passage. Instead of doing so, he not only consented, but requested, that the juror make the attempt. After the result was known, it was too late to make the objection. We do not see that the question of a defendant's power to waive a constitutional right is involved. The thing complained of here is, at worst, only an irregularity which should have been objected to when the opportunity was offered. The point as to jurors examining the box in which appellant's hat was said to have been kept over-night, we do not understand to be urged. The statement about it was made merely "on information and belief," and was insufficient. (*People* v. *Williams*, 24 Cal. 38.)

3. As to the point of the insufficiency of the evidence to support the verdict, it is enough to say that the mass

of evidence, both direct and circumstantial, against appellant, is too great to afford any warrant for the court to disturb the finding of the jury. Judgment and order affirmed.

BEATTY, C. J., PATERSON, J., WORKS, J., and FOX, J., concurred.

THORNTON, J., concurring. — In my opinion, the instructions are without error. I find no error in the record. I wish to add that I do not intend by what is said herein to approve the ruling in *People* v. *Bushton*. I concur in affirming the judgment and order.