[Crim. No. 531.  Department Two.—December 22, 1899.]

THE PEOPLE, Respondent, v. W. R. BLACKMAN, Appellant.

CRIMINAL LAW— TRIAL FOR FELONY— ABSENCE OF JUDGE FROM COURT-ROOM.—There can be no court without the presence of the judge, who is a component part of the court: and the absence of the judge from the courtroom during any part of the trial of a defendant for a felony, though he may be within hearing of the courtroom, is prejudicial error entitling the accused to a new trial.

ID.—EMBEZZLEMENT BY SECRETARY OF CORPORATION—EVIDENCE—BOOKS OF CORPORATION.—Upon a charge of embezzlement against the defendant, who was secretary of a corporation, the books of the corporation, showing a shortage, kept by a bookkeeper who committed suicide about the time when the shortage was discovered, are not admissible against the defendant, without proof that he knew their contents, and was responsible for their condition.

ID.—NEGLECT OF DUTY AS SECRETARY—PRESUMPTION.—No mere neglect of the duty of the defendant as secretary to examine the books

of the corporation can sustain a charge of embezzlement, and the presumption of innocence will overcome all presumptions of knowledge or control of the secretary over the books.

ID.—BOOKS OF COLLECTORS AND OF BANK.—Books of the collectors for the corporation, and of a bank in which deposits were made, not proven to be correct by those who kept them, are inadmissible against the secretary of the corporation, who is charged with embezzlement; and, if offered to show that the defendant did not keep correct books, the presumption of correctness is destroyed, and they cannot be received as admissions without proof of his knowledge and complicity in falsifying the books.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.   B. N. Smith, Judge.

The facts are stated in the opinion of the court.

W. H. Shinn, Frank G. Finlayson, and Earl Rogers, for Aplant.

Tirey L. Ford, Attorney General, and C. N. Post, Assistant Attorney General, for Respondent.

THE COURT.—Defendant was convicted of a felony.   Upon the hearing of the motion of defendant for a new trial two affidavits were read in its support, made by two different persons who were present at the trial.   In substance they deposed that after the court had instructed the jury, and while the district attorney was addressing the jury, the presiding judge left the bench and the courtroom and went into another room, closed the door behind him and was absent from the courtroom about ten minutes, during which time the district attorney proceeded with his argument to the jury upon the facts of the case.   No affidavit disputing these facts or explaining the absence of the judge was made by anyone.   Defendant's affidavits were filed with the notice of motion for a new trial, and when the motion came on to be heard and the affidavits were read the court made the following remark: "What! what! The court knows of its own knowledge that it was not absent any such time or in any such manner, and was not out of hearing of counsel while arguing said cause at any time, and that the door of my chamber was open at that time, and even when the door is shut I

can hear all that is going on in the courtroom." The attorney general cites *Southern etc. Co. v. National Bank,* 100 Cal. 316, in which the court quotes from a Nevada case "that in all motions before a judge, during the progress of the trial, he may act on his own knowledge in regard to things which in their nature are better known to himself than they could be to others." The motion in both these cases was for transfer of the place of trial upon the ground that the judge was interested in the cause, and in the case in 100 California the affidavit was not to the fact that the judge was disqualified by reason of interest, giving the disqualifying facts, but it was that, as affiant was informed and believed, the judge had said he considered himself disqualified. It has been held here recently that a motion to transfer a cause, on the ground of the bias of the judge, must be decided on affidavits (*People v. Compton,* 123 Cal. 403); so that the above rule does not apply in that kind of a case; nor do we think it would apply where the facts as shown clearly disqualify the judge as interested in the cause of action. The judge's belief cannot overcome the legal conclusion to be drawn from the facts. The attorney general also claims that the statement of the judge from the bench must be received as a refutation of the facts set forth in the affidavits. We are not called upon to decide whether the statement of the court is to be received as the equivalent of an affidavit in all cases, or whether the rule in the case of *People v. Compton, supra,* applies, as is claimed by defendant. The facts stated in the affidavits were not in their nature better known to the judge than to others in the courtroom—the sheriff, the clerk, counsel, and bystanders. If the statements were untrue, the fact could have been easily so shown by affidavit. But the statement of the judge, treated as an affidavit and given its full effect as such, does not controvert the affidavits presented with the motion in all their essential facts. In *People v. Tupper,* 122 Cal. 424, 68 Am. St. Rep. 44, the court said: "The judge is a component part of the court. There can be no court without the judge. And all that was done 'in the absence of the judge was done in the absence of the court. A defendant convicted under such circumstances has been deprived of his liberty without due process of law." In

*State v. Beuerman,* 59 Kan. 586, cited in the above case, it was said: "He [the judge] cannot even temporarily relinquish control of the court or the conduct of the trial. . . . . It is especially important that he should be visibly present every moment of the actual progress of a criminal trial where the highest penalty of the law may be imposed. . . . . If the presiding judge abandons the trial, or relinquishes control over the proceedings, the accused has good cause to complain." (Citing numerous cases.) Admitting all the judge said to be true, there is not in the statement sufficient to disprove the fact; indeed, it inferentially concedes that he relinquished control of the case for the time. Something more is required of the presiding judge than that he should be within hearing. That might be true if he were on the street and the windows of the courtroom open; and it may be true in this case, as the judge stated, that when in the adjoining room, with the doors shut, he "can hear all that is going on in the courtroom," but it must be obvious that he would be in no position to have control of the proceedings and certainly would not be presiding in the cause when in an adjoining room with the door open or shut. If any misconduct took place in the courtroom during such absence there would be no judge present to whom defendant's counsel could make complaint, or to determine what occurred in his absence. Upon the authority of *People v. Tupper, supra,* we must hold the conduct of the judge to be prejudicial error.

Objections were made to the introduction of the books of the corporation; that the evidence was mere hearsay and was incompetent; that it was not made to appear that the defendant had ever seen or knew of the entries offered, and the evidence was incompetent to establish any fact against him.

A great many entries made in a great many books were offered and received over the objection of defendant. It appeared that some of the entries were in the handwriting of defendant and others were not. They were introduced, not only to show the receipt of money by the defendant, but also to show forced balances, and thereby to raise the presumption of guilt. The bookkeeper was not sworn as a witness, but they were merely shown to be books kept by the company. Bolton, the bookkeeper, at about the time the shortage was discovered, had committed suicide.

The position of the learned judge of the trial court was stated by him: "This is one of the books of the company. He is charged by the by-laws and the custom of the company with the keeping of the books. This book was presumably in his custody and under his control. I don't care who kept it. If there is anything wrong about it that is for the defense." As a matter of course, this view is not insisted upon here. The presumption of innocence would overcome all the presumptions of knowledge and control, if they existed, and it was for the prosecution to show that the defendant was responsible for the condition of the books, and in a criminal proceeding it is not enough that it was his duty to know of their contents, and that in a civil action they would be competent evidence against him on that ground. He cannot be held for the crime of embezzlement because he has negligently performed his duty as secretary of the corporation, but such consequence might result under the rulings of the court. Most of the books were in the handwriting of Bolton. It was not shown that defendant examined them to see that they were correct, or, save by the presumption mentioned, that he knew anything about them. Books kept by the collectors were also introduced without any evidence as to their correctness, and that defendant ever saw them, and the same is true as to the books of the bank showing what deposits were made.

The books were certainly not admissible as shop-books. The receipt of such books in evidence is an exception to the general rule, and they are admitted for a limited purpose only. This case is clearly not within the exception. (1 Greenleaf on Evidence, sec. 120 b.)

Aside from shop-books kept by one of the parties to an action, "regular entries made in the course of business" are sometimes received. (1 Greenleaf on Evidence, sec. 120.) Such entries must be made in pursuance of some system which is a part of the business, should be nearly contemporaneous with the event, and made by one who knew the fact and had no interest in making a false entry. In short, the motive for making the entries must be solely to record the truth and not to misrepresent. The illustrations given by Greenleaf are entries made by "one sending orders or bills, by a notary sending protests, a

cashier sending notices of nonpayment, a marine inspector certifying to a vessel's condition, an attorney keeping a book of proceedings, an asylum officer keeping a weather record, records of baptism or marriage by priest or minister." In all these cases the record was made only because it was deemed important to preserve in perpetual memory what actually occurred. There was no inducement to make a false record, but, on the contrary, false entries in most of the cases would be misleading and injurious.

It must be kept in view that, after all, such evidence is hearsay and secondary, and is receivable only when better evidence cannot be had, and in the special cases which come within the rule. Being entries made in due course of business does not make them primary evidence.

There is much plausibility in the contention that they are admissible, as against an employee, to show what amount of money was received by the corporation, and when it was received, provided, of course, there is nothing which tends to impeach the record as truthful. In this case one purpose for which the books were offered was to show that defendant did not keep correct books, but that they were falsified for the purpose of enabling the defendant to perpetrate the crime, or for the purpose of concealment. Under such circumstances they cannot be received as regular entries made in the course of business. The presumption of correctness is destroyed, and they are not offered as proof of the facts recited.

If there was evidence that the entries were made by the defendant or under his direction, or with his knowedge, they would most undoubtedly be competent and important evidence against him. They are clearly inadmissible, except as admissions, or as acts done in furtherance of the crime charged against him. His knowledge and complicity in falsifying the books must first be shown. The presumption of innocence with which the law clothes the defendant is sufficient to overcome the presumption which might prevail in a civil case, that he knew because it was his duty to know. As before stated, he is not to be punished criminally for negligently performing his duty.

As a new trial must be had on other grounds, it is not necessary to discuss this matter further. The books kept by the

collectors and the bank-books should have been offered in connection with the evidence of those who kept them. As primary evidence could have been had in these cases, there was no excuse for offering secondary evidence.

The judgment is reversed and the cause remanded for a new trial.