[Crim. No. 51.    Second Appellate District.—April 3, 1907.]

## THE PEOPLE, Respondent, v. JOHN WHITE, Appellant.

CRIMINAL LAW—ROBBERY—SUPPORT OF VERDICT—CONFLICTING EVIDENCE —FORCE AND FEAR.—Upon a prosecution for robbery, where the evidence is conflicting as to the identity of the defendant, the jury are the sole judges of the credibility of the witnesses and the weight of the conflicting evidence; and where the complainant's description of the occurrence up to the time of the delivery of her purse to her assailant shows that it was delivered through force and fear, the taking involved the crime of larceny, but embodies every element of the crime of robbery.

ID.—MOTIVE—ROBBERY AND RAPE—INSTRUCTION—PRESUMPTION.—Where the evidence indicates a motive and intent to commit both robbery and rape, and the court instructed the jury that if the assault was for the purpose of rape, and if there was no intent to rob, and no taking of the purse by force or fear, the defendant should be acquitted, it must be presumed that the jury did its duty in heeding the instruction.

ID.—QUESTIONS OF FACT—CONCLUSIVE DETERMINATION.—The credibility of the complaining witness and the preponderance of the evidence, and also what intent and motive were established by the evidence

were questions of fact, which were conclusively determined by the superior court in denying the motion for a new trial, and cannot be considered by the appellate court.

ID.—INSTRUCTIONS NOT CONFLICTING AS TO INTENT AND MOTIVE.—The instruction dealing with the hypothesis of intent to commit rape without intent to rob did not conflict with another instruction dealing with the hypothesis of robbery, notwithstanding an assault may have been made for some other purpose or motive.

ID.—INAPPLICABLE REQUESTS.—Instructions given to the jury must always be adapted to the evidence and circumstances of the case on trial, and requests for instructions by the defendant which were inapplicable thereto were properly refused.

ID.—IMPROPER REMARK BY DISTRICT ATTORNEY—STATEMENT OUTSIDE OF RECORD—QUESTION NOT PRESENTED TO TRIAL COURT.—An improper remark by the district attorney as to matter outside of the record is not ground of reversal, where the attention of the court was not called to the matter at the time, and no opportunity was given to the trial court to correct the abuse, where the effect of the remark could have been removed by an instruction to the jury to disregard it.

ID.—FAILURE TO REQUEST INSTRUCTIONS.—The failure of the court to instruct the jury upon any proposition deemed essential by the defendant is not to be regarded as error unless the defendant made a request for said instruction.

ID.—CRIMINAL PROPOSAL BY DEFENDANT TO PROSECUTRIX—WRITTEN STATEMENT—RIGHT OF CROSS-EXAMINATION NOT INVADED.—The fact that the prosecutrix was allowed to give a written rather than an oral statement of a criminal proposal made to her by the defendant at the time of the assault was not an invasion of the right of cross-examination.

ID.—DOUBLE VIEW OF PREMISES—ABSENCE OF JUDGE—WAIVER OF OBJECTION.—The absence of the judge from a first view by the jury of the premises where the alleged robbery was committed was erroneous, but where the jury was properly instructed and there was no timely objection to his absence, and where the judge fully instructed the jury to disregard all impressions received upon the first view, and another view was taken in the presence of the judge without objection, there was no ground for granting a new trial by reason of the absence of the judge during the first view.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

H. H. Appel, and F. R. Robertson, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for
Respondent.

TAGGART, J.—Defendant was informed against for the
crime of robbery. From a judgment of conviction in the
superior court, and an order of that court denying his motion
for a new trial, he appealed to the supreme court. This ap-
peal was regularly transferred to this court for hearing and
decision.

The evidence of the commission of the crime rests almost
entirely upon the testimony of the complaining witness. The
defense relies upon an alibi and the insufficiency of the
identification of the defendant.

As the complaining witness was returning to her home
about half-past 10 o'clock on the night of June 18, 1902, a
man stepped in front of her. She stopped, threw up her
hands and he struck her with a rock. She screamed, he told
her to "shut up," put his arm around her neck and struck
her in the mouth with his fist. She kept screaming and he
kept "beating" her. They both fell down, he on his knees
and she on her back on the sidewalk. He kept pounding her
in the face and she begged him to let her up. At last he
"loosened up a little" on her and she said, "Do you want
my money?" and he said, "Where is it?" She said, "It's
in my pocket." He said, "Give it to me." . . . He kept say-
ing, "Give it to me." "So," says the witness, "I twisted
myself in shape that I got the pocketbook, and he took it."

After another effort to scream, followed by further beat-
ing, the man made a proposal to her which she characterized
as the "worst proposal a man can make to a woman." This
statement was stricken out on motion of defendant. The
witness then further testified that she was dragged through
an opening in a billboard to a sandbank near the river, an
effort was made by her assailant to tear her clothing from
her, the undoing of his own clothing by the man, and other
preparations made by him tending to show an attempt to
commit rape. The witness described the face and dress of
the man with much particularity of detail and attributed her
ability to do this to the location of certain lights and to the
fact that while she had been held down on the ground, an elec-

tric headlight on a passing street-car had shone upon the man's face and clothing in such a manner as to enable her to see him with great distinctness.

The "proposal" spoken of was not introduced upon the direct examination of the witness. Defendant demanded that the prosecution be required to disclose the language of this proposal as part of the transaction, and excepted to the refusal of the court to require this to be done. On cross-examination the witness requested to be relieved from using the language of the proposal, and was permitted, with consent of defendant's attorney, to write it on a piece of paper. It was a solicitation of sexual intercourse. It does not clearly appear from the record how or when (if at all) this language was disclosed to the jury. The suggestion was made by the district attorney that the writing be submitted to counsel and jury, but it does not affirmatively appear that this was done.

It is urged that the verdict is contrary to the evidence because, among other things, the condition of the lights at the scene of the crime were such that it was improbable that the complaining witness could have seen her assailant with sufficient clearness to be able to identify him. Beside the cross-examination of the complainant in this regard, the record shows many pages of testimony disclosing the results of various experiments made by different persons at the place where the offense was consummated to test the effect of the lights mentioned in complainant's testimony. The testimony introduced by the defendant tended to establish a condition of darkness, and that of the prosecution one of light. The jury resolved these contradictory opinions in favor of the truthfulness of complainant's story, and they were the sole judges of the credibility of the witnesses and of the weight of such conflicting evidence.

It is also contended that the motive and intent shown by the evidence indicated rape rather than robbery, that no *taking* was proven and, conceding a larceny was established, that it was not accompanied by sufficient force to constitute robbery. The complainant's description of the occurrence up to the time of the delivery of her purse to her assailant embodies every element of the crime of robbery. Force and fear were both present, and it is unnecessary to distinguish those cases discussing the violence of the force used.

Motive and intent to commit both robbery and rape appear from the evidence. In order that evidence of the latter might not induce the jury to find the defendant guilty of the former, merely because robbery was the crime charged in the information, the court gave the instruction marked "XXX." The jury were thereby informed that, if the assault was for the purpose of rape and there was no intent to rob, and no taking of the purse by either force or fear, the defendant should be acquitted. It must be presumed that the jury did its duty and obeyed this instruction of the court.

The questions of the credibility of the complaining witness and the preponderance of the evidence, so extensively presented by appellant in his brief, were ultimately and conclusively determined by the superior court when it denied his motion for a new trial, and cannot be considered by this court. What intent and motive were established by the evidence were also questions of fact and were included in that determination.

The effect of instruction XXX as to intent with which the crime was committed was not neutralized by the giving of the last instruction (not numbered) by the court. The latter instruction is in the following language:

"The court instructs the jury that, if you believe from the evidence, beyond a reasonable doubt, that the personal property mentioned in the information was in the possession of the witness Kate A. Dripps, and that the defendant by the use of force and violence upon the person of said Kate A. Dripps, or by putting her in fear, compelled her, against her will, to deliver to him the said personal property, or any part thereof, mentioned in the information, from her person, or immediate presence, as charged in the information, and that defendant then and there took and received said personal property from said Kate A. Dripps, under such circumstances and by such means, then the defendant would be guilty of robbery, even though you may further believe from the evidence that the defendant may have attacked the said Kate A. Dripps (if you believe from the evidence that he did attack her) for some other purpose or motive."

If, as contended by appellant, the jury were advised by this instruction that a felonious intent to take the personal property mentioned in the information was not necessary to constitute the crime of robbery, then it would have been

an erroneous statement of the law, but we do not think this a necessary or proper construction of the language used by the court. The moving intent was evidenced by the acts of the party and the presumption of law that he intended the ordinary consequences of his acts. (Pen. Code, sec. 20; Code Civ. Proc., secs. 1962, 1963.) This attached successively to each act as done regardless of the original intent.

The last instruction given is not in conflict with instruction XXX. By the latter instruction (XXX) the jury were told that if the assault was not made "for the purpose of committing the crime of robbery, and that the person who assaulted Mrs. Dripps did not intend to rob her," and did no act in connection with the assault from which an intent to commit the crime of robbery could be inferred, then they should acquit the defendant. One instruction deals with an hypothesis in which no element of robbery was present at any time in the transaction. The other with a transaction in which the *original* attack was made with the intent to do something else, but the later acts in which justified the inference of an intent to commit the crime of robbery.

Appellant contends that the court should have instructed the jury in regard to three matters upon its own motion, to wit: The effect of evidence tending to show intoxication in respect to the motive or intent with which an act was done; the definition of the word "fear" as given by section 212 of the Penal Code; and the definition of the word "robbery" as distinguished from grand larceny; and the failure to do so is assigned as error. A consideration of the last proposition includes the same question of law arising from the failure of the trial court to give an instruction as to the "lesser offenses" included in the crime of robbery (instruction XIV), at the request of the appellant.

Instructions given to the jury must always be adapted to the evidence and circumstances of the case on trial. The whole defense rested upon the theory that defendant was perfectly sober. He staked his case upon the fact that he was not there. So there is nothing in his case to justify an instruction upon the question of intoxication. The case for the prosecution did not rest upon the intoxication of the defendant to establish motive. It did not rely upon fear alone to show a robbery, but force and fear combined. There was no element of stealth in the taking proven, and nothing in

the evidence to require the court of its own motion to distinguish robbery and grand larceny. This case is one of the class in the mind of the court, when the opinion in the case of *People* v. *Church,* 116 Cal. 303, [48 Pac. 125], was written, and the following language used: "Many cases of robbery may be disclosed by the evidence where the trial court would be justified in refusing an instruction to the effect that the defendant could be convicted of grand larceny. Such cases would be those where the evidence, without contradiction, indicates the offense to have been accomplished by means of force or fear."

The statutory definition of the crime of robbery was given to the jury in one of the instructions of the court. That was sufficient. The failure of the trial court to instruct the jury upon any proposition deemed essential by the defendant is not to be regarded as error, unless he made a request for such instruction. (*People* v. *Fice,* 97 Cal. 460, [32 Pac. 531].) This has been applied to an instruction as to intoxication in the case of *People* v. *Oliveria,* 127 Cal. 381, [59 Pac. 772].

We have considered defendant's objections to the instructions given by the court, notwithstanding the attorney general's position that they are part of the judgment-roll and are reviewable only as part of the judgment-roll and that the record does not disclose the judgment from which the appeal was taken. It is unnecessary to determine the question of practice raised, in view of the rulings made on the questions of law, further than to say that we do not adopt the views of the attorney general as applied to this case.

The defendant suffered no injury because the court refused to require Mrs. Dripps to repeat to the jury in open court upon her direct examination the proposal which she said was made to her by her assailant. The information desired was obtained by defendant on cross-examination in answer to his counsel's question. The response was given to defendant's counsel in the manner requested by him, that is, in writing, and if it failed to reach the jury it was the defendant's own act. It cannot be presumed that, had he insisted upon an oral response, and not accepted the written one, the court would not have required the witness to answer him orally. No constitutional right of the defendant was invaded. It is not a constitutional right of the defendant to

have the prosecution conduct its case in accordance with his
wishes, and there was no interference with the fullest exer-
cise of his right of cross-examination in the case in this con-
nection.

The remarks of the district attorney specified as error and
misconduct upon his part were all within the bounds of
legitimate inference from the evidence, except one. The
statement, outside the record, "that the shirt defendant wore
the night of the alleged assault had not been in the pos-
session of the prosecution, and that it must be in the pos-
session of the defendant," was the statement of a fact im-
portant to the case of the prosecution and highly prejudicial
to the defendant. It would have been reversible error had
the matter been called to the attention of the trial court
at the time and that court had refused to instruct the jury
to disregard the remark, but no opportunity was given the
trial court to correct the abuse. It is essential, in order that
such an act shall be reviewed by this court, that it shall first
be called to the attention of the court below *at the time,* in
order that the court may so act in the premises as, if possi-
ble, to avoid the error and prevent a mistrial. (*People* v.
*Kramer,* 117 Cal. 647, [49 Pac. 842].) The effect of such
a remark could have been removed by an instruction to the
jury to disregard it. (*People* v. *Shears,* 133 Cal. 159, [65
Pac. 295].)

The jury were twice taken to view the place where the
crime had been committed. On both occasions the proper
safeguards were thrown around the jury and the proper
cautions and instructions were given, except that on the
first occasion the trial judge failed to accompany the jury
to the scene. Misconduct of the jury at the first view was
claimed by defendant, and presented, by affidavit, to the
trial judge upon the motion for a new trial. This showing
was met by counter and conflicting affidavits from the prose-
cution, and, by its ruling on the motion, the trial court as-
certained the truth to be with the prosecution. This was a
matter peculiarly within the province of the judge who tried
the cause and this court will not disturb his finding. (*People*
v. *Rushing,* 130 Cal. 449, [80 Am. St. Rep. 141, 62 Pac.
742].)

The defendant did not object to the first view being taken
upon the ground that the jury were not accompanied by

the judge, but after the return of the jury into the court made this the ground of an exception, and asked the court to have the record to show the fact and his exception.

The learned judge who tried the case recognized the error committed by his absence from the first view and with the purpose of correcting such error, if possible, advised the jury of the error committed, and instructed them to disregard any and all information. or impressions acquired during or by reason of the first view, and to eliminate everything seen or heard on that occasion in the same way that they should disregard any testimony ordered stricken out, and ordered that a second view be taken. No tenable objections to the proceedings in connection with the second view, or exceptions to the court's actions in relation thereto, appear in the record.

Appellant contends that it was irremedial error for the jury, under the instructions of the court, to view the premises without the presence of the judge of the court. That he was entitled to have the judge present as a constitutional right, and that his failure to object cannot be construed as a waiver. The attorney general, on the other hand, in support of the action of the trial court, urges, first, that: A view is not the taking of evidence, neither is it "the trial"; therefore, the presence of the judge is not necessary. Next, that if his presence be necessary, his absence is but an irregularity which the defendant could and did waive. And that the jury were instructed to disregard the first view, and the first view became merged into the second.

Whatever may the rule in other jurisdictions, it is clear that the later decisions of the supreme court of this state are based upon the theory that in viewing the place in which an offense is charged to have been committed, under section 1119 of the Penal Code, the jury is "receiving evidence." (*People* v. *Milner,* 122 Cal. 184, [54 Pac. 833].) It was upon this theory that it was declared to be error for the jury to view the place in the absence of the defendant in a criminal case. (*People* v. *Bush,* 68 Cal. 623, [10 Pac. 169]; S. C., 71 Cal. 606, [12 Pac. 781].) It must also be accepted as the law of this state that the judge is a component part of the court, and there can be no court without the judge. And that a defendant convicted under such circumstances has been deprived of his liberty without due process of law. (*People* v. *Tupper,* 122

5 Cal. App.—22

Cal. 424, [68 Am. St. Rep. 44, 55 Pac. 125] ; *People* v. *Blackman,* 127 Cal. 248, p. 251, [59 Pac. 573] ; *People* v. *Yut Ling,* 74 Cal. 570, [16 Pac. 489].)

The opinion in *People* v. *Blackman,* in so far as it has any bearing on the question here involved, relies upon the opinion in *People* v. *Tupper,* which, in turn, rests upon *O'Brien* v. *People,* 17 Colo. 561, [31 Pac. 230] , *Turbeville* v. *State,* 56 Miss. 793, and *State* v. *Beuerman,* 59 Kan. 586, [53 Pac. 874].

The Colorado case mentioned (*O'Brien* v. *People*) is expressly distinguished, by the justice writing the principal opinion therein, from one in which there is a waiver, or consent to, the absence of the judge. The chief justice, in a concurring opinion, says that every absence of the judge from the courtroom during a criminal trial is *not* reversible error. He concurs in the decision because an error was committed, by taking the testimony of a witness away from the courtroom, in the presence of the jury, when the judge was absent.

In *Turbeville* v. *State,* the decision of the court, as stated in the syllabus, is, that: ''The circuit judge's absence from the bench during the argument of a felony case is *not* such abandonment of the court and conduct of the trial as that the judgment should be reversed, if he remains in an adjoining room within hearing with a lawyer on the bench to call him if needed.'' The portion of the opinion supporting the California cases is: ''*If* we would consider this statement of the facts as showing such absence from the room on the part of the judge as constitutes a temporary relinquishment of the control of the court and of the conduct of the trial, we should unhesitatingly reverse the judgment. There can be no court without a judge, and his presence as the presiding genius of the trial is as essential during the argument as at any other time.''

In *State* v. *Beuerman* it is said: ''If the presiding judge abandons the trial, or relinquishes control over the proceedings, the accused has good cause to complain. (*Meredeth* v. *People,* 84 Ill. 479 ; *Thompson* v. *People,* 144 Ill. 378, [32 N. E. 968] ; *State* v. *Smith,* 49 Conn. 376 ; *Turbeville* v. *State,* 56 Miss. 793 ; *Palin* v. *State,* 38 Neb. 862, [57 N. W. 743] ; *O'Brien* v. *People,* 17 Colo. 561, [31 Pac. 230].) The fact that the court may not see or hear everything occurring in the courtroom, or that he may step into an adjoining room, but not out of hearing of the proceedings, is not necessarily

prejudicial to the interests of the defendant in every case; but the presiding judge cannot safely absent himself from the trial, or relinquish control over the proceedings *during the trial.*'' If the language of this opinion be considered in connection with the holding by the Kansas court in *State* v. *Adams,* 20 Kan. 311, that a view of the premises by a jury is not receiving evidence during the trial, and the absence of either judge or defendant therefrom not error, because the statute does not in terms require them, or either of them, to be present, it is apparent that the Kansas court would regard that case as not applicable here.

In *People* v. *Yut Ling* it is said: ''When the jury went to view the premises, the judge of the court should have gone along with them. It was the right of the defendant to have the judge accompany the jurors when they went to take this view.'' We are left in the dark as to the reasons of the court for its position on this question, and Justices McFarland and Paterson dissent from the decision without comment. In the absence of reasons given, we have assumed that the court considered the view as receiving evidence (*People* v. *Bush*), and a part of the trial, and therefore the absence of the judge from the trial was error. (*People* v. *Tupper,* 122 Cal. 424, [68 Am. St. Rep. 44, 55 Pac. 125].)

Accepting these cases as declaring the law of this state, and considering them in the light of the reasons given for the decisions upon which they rest, it is apparent that the error committed by the court here is such an error as may, in a proper case, be corrected by the court, and the right to object thereto may be waived by the defendant.

The view has been a part of the jury trial since its origin, and at one time constituted, with the personal knowledge of the jurors, the entire evidence considered by the jury in arriving at its verdict. There is nothing in the reports of the earlier English cases to indicate that the judge was required to be present at the view, and the practice permitted a view by either a part or the whole of the jury. In some of the cases the courts seemed concerned chiefly in determining how many jurors, or what part of the jury, must have visited the scene in order to sustain the verdict. For many years after other evidence than the knowledge of the jurors began to be considered by the jury, the view continued to be the main evidence received in cases of waste, trespass and nuisance. It

is still made an important part of the evidence in cases of waste in some states, and in other states in cases of eminent domain, by express statutory provisions. The personal knowledge of the juror can no longer be considered, unless he be sworn and examined in open court (Pen. Code, sec. 1120), the freedom of the common-law view is much restricted, its use now rests in the discretion of the trial court, and the whole matter is generally regulated by statute. In construing these statutes the courts have reached widely divergent conclusions. The opinions range from those holding that a statute providing for a view of the premises in a criminal case, similar to section 1119 of the Penal Code, is unconstitutional because such a view is receiving evidence by the jury when absent from the court (*Foster* v. *State,* 70 Miss. 755, [12 South. 822]), to those holding that the view is no part of the trial, and that the jury are not receiving evidence, but merely receiving impressions from inanimate objects that will enable them better to comprehend and apply the testimony in the case. (*State* v. *Adams,* 20 Kan. 311; *Shular* v. *State,* 105 Ind. 289, [55 Am. Rep. 211, 4 N. E. 870]; *People* v. *Johnson,* 110 N. Y. 134, [17 N. E. 684]; *People* v. *Thorn,* 156 N. Y. 286, [50 N. E. 947]; *State* v. *Mortensen,* 26 Utah, 312, [73 Pac. 562].)

This diversity of conclusion appears to be due, largely, to the restriction of the term "the trial" to the permanent proceedings in the courtroom, and an effort of the courts to evade the apparently inevitable result of that construction upon the case under consideration.

Every step taken in a criminal case, by, or in, the court wherein the case is pending, from issue joined to verdict rendered, is a step or proceeding "arising during the course of the trial." (*People* v. *Turner,* 39 Cal. 370.) In this extensive sense, "the trial" would include many occasions when the judge need not be personally present exercising control or conducting the trial. This is the case where the jury are kept together during the entire trial. Between the sessions of the court they are under the sole control of the sheriff, and if they make an unauthorized visit in a body to the place where the crime was committed, while in charge of that officer, the error may be waived, and the court can consider whether or not the view influenced the minds of the jurors, in ruling on a motion for a new trial. (*Warner* v. *State,* 56 N. J. L. 686,

[44 Am. St. Rep. 415, 29 Atl. 505].) The same rule was applied in a case in which the gist of the action on trial was the condition of the *locus in quo.* (*Rush* v. *St. Paul,* 70 Minn. 5, [72 N. W. 733].) The inquiry is, "Was the (misconduct) not calculated to prejudice the result of the trial? Is it apparent that it could have had no influence upon the verdict?" (*People* v. *Stokes,* 103 Cal. 193, [42 Am. St. Rep. 102, 37 Pac. 207].) Such error should be objected to at the time, and consent of defendant or his failure to object in time will defeat his right to complain. (*People* v. *Tarm Poi,* 86 Cal. 225, [24 Pac. 998] ; *People* v. *Fitzgerald,* 137 Cal. 546, [70 Pac. 554].)

This same test has been extended to an absence of the judge from the courtroom, without suspending the trial, during the examination of a witness for the prosecution (*Hays* v. *State,* 58 Ga. 35), and during the argument of the case. (*O'Shields* v. *State,* 81 Ga. 301; [6 S. E. 426] ; *Pritchett* v. *State,* 92 Ga. 65, [18 S. E. 536.].)

The conditions surrounding the jury at the view; the restrictions upon their actions and that of the judge; the inability of the judge or anyone else to control or direct their observations to any objects other than those indicated to the person appointed as "shower" while in open court at the courtroom; the absence of any assistance of counsel to indicate the details of the observation which make for their respective clients; the prohibition of the taking of testimony or receiving of any other information than that given by the "shower," coupled with the statutory requirement that the jury be placed in the custody of the sheriff, might call for a distinction between the modified form of trial at the view and the proceedings taken and had in the courtroom, if this were necessary to this decision. But the rule having been established in this state that the defendant is of right entitled to have the judge present at the view, the modified character of his functions there becomes immaterial.

Considering the absence of the judge as involving the question of whether or not it be depriving the defendant of his liberty without due process of law, we see no reason why the rule above declared should not be applied to the error committed.

Due process of law undoubtedly means, in the due course of legal proceedings according to the rules and forms which have been established for the protection of private rights;

and that changes of forms, proceedings and process from time to time shall be made with due regard to the landmarks established for the protection of the citizen. (Cooley's Constitutional Limitations, 355.)

Many of the common-law, statutory and constitutional rights of a defendant may be waived by him, and some will be presumed to have been waived if they have not been asserted in a timely manner. He is entitled to be tried by a full common-law jury on a charge of felony before sentence, but he may waive all the incidents of the trial established for his protection and enter a plea of guilty. He is entitled to challenge jurors both for cause and peremptorily without assigning cause, but if he fails to do so, having had the opportunity, it is too late to complain after conviction. So it is with having the process of the court to secure the attendance of his witnesses, and his right to have only competent evidence introduced upon the trial. Failing to assert his right, he is deemed to have waived it.

In the case at bar, the defendant had an opportunity to assert every legal right involved, and either failed to do so, or asserted them in such a manner that he is deemed to have waived them. If the first view be left out of consideration, the record would show a complete trial unattended by any prejudicial error preserved and excepted to as required by the rules of practice. The first view was no more prejudicial to the defendant than the introduction of incompetent evidence during the trial, which, on discovery of the error by the court, was directed to be stricken out, and the jury instructed to disregard it. The jury were aided in doing this by the subsequent view. The impressions obtained from the two views would be presumed to be the same, as the second view covered the same grounds, the shower pointed out the same places and objects, and the affidavits produced on the motion for a new trial show that there was no change in the location of the objects viewed, or the topography of the scene, between the first and second views. If a different impression were obtained, that from the second being more recent would no doubt be the more vivid at the time of the deliberations of the jury.

There was no dispute at the trial in relation to the location of any of the objects which were seen by the jury on either view. The evidence in relation to the disputed matters was

directed to the angle at which the lights fell upon certain objects and places, the effect of the distance of the street lamps from the scene, and the strength of the light that would be given by them at the place of the occurrence. Even this evidence was of minor importance, as the complaining witness based her ability to see so distinctly upon the fact that the headlight of a passing street-car fell upon the face and clothing of her assailant. Both of the views by the jury were taken in the daytime, and there was no opportunity on either occasion to observe the effect of the lights upon the scene. The case was one in which a view was proper and served the purpose which should be the primary, if not the only, consideration in criminal cases, to wit, a knowledge of the premises that the jury may the better apply the testimony heard in court. The evidence received on both views was evidently of this character.

However the error be classified or considered, the facts disclosed by the record, on the motion for a new trial, warranted the trial judge in finding that the prosecution had sustained the burden of showing that no injury resulted to defendant's case, and that he was not prejudiced by the absence of the presiding judge from the first view.

No timely objection to the absence of the judge from the first view was made; such absence was not prejudicial to the defendant or subversive of his legal rights, and there is no ground for granting a new trial. (*Horne* v. *Rogers,* 110 Ga. 362, [35 S. E. 718].)

It is not every unauthorized view of the *locus in quo* that will require the setting aside of a verdict. Considerations of practical justice forbid it. If verdicts were set aside for such reasons, there would be no reasonable limits to litigation, especially in cities where the opportunities are great for jurors personally to view the locality of a crime under consideration.

Judgment and order appealed from affirmed.

Allen, P. J., and Shaw, J., concurred.