[Crim. No. 701.   Fourth Dist.   Jan. 21, 1947.]

THE PEOPLE, Respondent, v. LLOYD FRANK QUINN et al., Appellants.

Edgar G. Langford for Appellants.

Robert W. Kenny, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants were charged with the crime of robbery in that on April 23, 1946, they willfully, unlawfully and feloniously took a wallet from one James Van Wagner, under the circumstances named in the statute. A jury found them guilty and they have appealed from the judgments and from the order denying their motions for a new trial.

There is little, if any, dispute as to the material facts. Van Wagner was a student in the San Diego State College. About 9 or 9:30 p. m. on April 23, 1946, he drove into Balboa Park in a Plymouth automobile, accompanied by a girl friend. While they were parked on a side street, some two or three blocks from the main entrance to the park, the appellants approached the car. Alverson pointed a pistol at Van Wagner and ordered him to get out of the car with his hands up. When he complied he was ordered by both Alverson and Quinn to step back. Alverson then told Van Wagner to throw his wallet on the ground. Van Wagner took his wallet out of his pocket and threw it on the ground, a distance of about six feet. Alverson then said "I will mail it back to you." Van Wagner replied that this would not be necessary as there wasn't any money in it. He was then told to pick up the wallet and show it to Alverson. When he took a step toward Alverson he was again told by both Alverson and Quinn to

step back. He stepped back, opened the wallet and showed the appellants that there was nothing in it. Alverson then said "What about your girl friend, does she have any money?" Van Wagner replied "No" and Alverson then said: "All right. Get in that car and get out of here." Van Wagner then drove away and notified the police. The appellants walked out of the park and some five or six blocks toward the downtown section of San Diego, where they were taken into custody by the officers. At that time Alverson had a fully loaded pistol and five extra cartridges in his pockets.

Alverson had been released from Preston during the preceding February, and Quinn had previously been convicted of burglary. Van Wagner had never known either of the appellants. Alverson did not personally know Van Wagner but on several occasions had seen him entering or working with a Plymouth car across the street from Alverson's home. Alverson testified that his reason for having the gun was that he was taking it downtown to sell it. He also claimed that it was not loaded during the robbery, but that he and Quinn loaded it as they were walking away from the park. Alverson admitted that he had done all of the things testified to by Van Wagner and Quinn admitted on the stand that he had fully participated therein. They testified that they had accidentally met near this entrance to the park and that they walked around searching for an address that had been given to Quinn by a girl. They were unable to locate the address and Alverson testified that he then noticed Van Wagner's car over in the park and decided to play a joke on him, and that he "was going to tell him about it the next day."

The appellants' first contention is that the evidence is insufficient to sustain the verdicts in that it fails to show a taking and asportation of property which is sufficient to constitute the crime of robbery. Reliance is placed on the reference to *manual* possession in *People* v. *Beal*, 3 Cal.App.2d 251 [39 P.2d 504] and *People* v. *Clark*, 70 Cal.App.2d 132 [160 P.2d 553]. In the first of these cases it was said: "The crime of robbery is complete when the robbers without lawful authority and by means of force and fear obtain possession of the personal property of another in the presence of its lawful custodian and reduce it to their manual possession." That language was applicable to the facts in those cases but it was not intended to establish a fixed rule of law that the crime of robbery could not be complete unless the property in question

was actually taken into the hands of the robber. ■ Section 211 of the Penal Code defines robbery as follows: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." This requires the taking of personal property which is in the possession of another from his person or immediate presence but does not require that this be done by the use of the hands of the person doing the taking. ■ Where there is an intent to so take the property while some asportation is required it is well settled that the distance it is taken may be very small. (*People* v. *Clark*, 70 Cal.App.2d 132 [160 P.2d 553].) A very slight removal is sufficient. (*Driggers* v. *State*, 96 Fla. 232 [118 So. 20].) ■ It would be a strained and unreasonable construction of the language of the statute to interpret it as necessarily requiring the taking of the stolen property into the hands of the one committing the robbery. The property taken might be a horse or a cow forcibly taken from the immediate presence and possession of the victim. It would be possible to feloniously take such property from the possession and immediate presence of the victim, but it would be obviously impossible to take such property into the hands. A taking of possession away from the victim and into the control of the taker is sufficient. ■ In the instant case, there was admittedly an intentional removal of this wallet from the possession of its owner, accomplished by fear of a gun in the hands of one of the appellants, and a removal of the property for some six feet. That the property was thereafter returned when it was found to contain no money is not a material factor. There is nothing in the statute that requires any more in the way of a taking or asportation than here appears and the evidence is sufficient in the respect complained of.

■ It is next contended that the court erred in giving the following instruction:

"You are instructed that if the jury believe beyond a reasonable doubt that at the order of the defendant Alverson, and motivated by that order and fear of the consequences if he should refuse, and against his will, Mr. Van Wagner threw his billfold on the ground, this would sufficiently establish a taking of personal property in the possession of Mr. Van Wagner, from his person or immediate presence, and against his will, accomplished by means of fear."

It is argued that this instruction omits the element of an intent to steal; that it was prejudicial in that it deprived appellants of the only defense they offered, to wit, that the whole affair was a practical joke; and that this instruction authorized the jury to convict the appellants irrespective of whether they intended to steal the wallet and irrespective of whether or not they had reduced it to their manual possession.

In the closing brief it is argued that no instruction was given to the effect that intent was a necessary element of the crime charged, and while it is admitted that the appellants did not ask for an instruction to the effect set out in section 20 of the Penal Code, it is argued that another instruction offered by the appellants and refused by the court covered that ground. With respect to the latter point, the refused instruction did not cover that ground at all but related to what is necessary to constitute an attempt to commit a crime and stated that the acts must go so far that they will result in the accomplishment of the crime unless frustrated by extraneous circumstances. No attempt to commit a crime was here charged, there was no evidence of extraneous circumstances which frustrated the completion of the crime, and the offered instruction was properly refused.

The criticized instruction was not a formula instruction and purported merely to cover the element of taking and asportation. The phrase "at the order of the defendant Alverson" infers an intentional order and could not well be construed otherwise. Immediately preceding the giving of that instruction the court had given the statutory definition of robbery in the language of the statutes. This is usually held sufficient. (*People* v. *White,* 5 Cal.App. 329 [90 P. 471]; *People* v. *Castile,* 3 Cal.App. 485 [86 P. 745].) While the question of intent was one of fact for the jury (*People* v. *Post,* 76 Cal.App.2d 511 [173 P.2d 48]) there was really no factual issue here in that regard as the appellants admitted that they had committed all of the acts exactly as testified to by the victim, and that they intentionally forced him to part with the possession of his wallet. While Alverson testified that he had another secret purpose in mind he admitted doing the acts in question, and the only inference possible from his own testimony is that he intended to perform these acts. The intent to do the act was admitted. Without conceding that the defense offered, that the acts were performed for the purpose of playing a practical joke, would be a valid defense, that

defense was not taken from the jury by the instruction complained of. The jury was otherwise instructed that to constitute robbery there must be a felonious taking of personal property from the person of another, and that instruction necessarily included the question of intent.

While it may be conceded that an instruction should have been given to the effect that in constituting a crime there must exist a union or joint operation of act and intent, it cannot be held that any possible error was sufficiently prejudicial to justify a reversal in view of the provisions of section 4½ of article VI of the Constitution. The intention of the parties to perform the acts in question clearly appeared even from their own evidence. Aside from admitting the acts in question Alverson testified that when arrested he told the police certain things, half of which were true, but that ''I did not mention anything about the robbery''; and Quinn, when he was talking about other matters on three separate occasions stated that they occurred ''after the holdup.'' A reading of the story told by the appellants on the witness stand clearly discloses why the jury refused to believe it, and it is unthinkable that the result in this case could have been affected by the failure to give any other instruction on the question of intent.

The judgments and order are affirmed.

Marks, J., and Griffin, J., concurred.