[Crim. No. 234. First Appellate District.—February 8, 1911.]

THE PEOPLE, Appellant, v. W. B. NASH, Respondent.

CRIMINAL LAW—TIME AND MODE OF APPEAL—DATE OF JUDGMENT—CODE AMENDMENT NOT RETROACTIVE.—The amendment of sections 1239 and 1240 of the Penal Code, approved April 22, 1909, as to the time and mode of taking an appeal from a judgment or order, by announcement in open court, only applies to judgments and orders rendered after the time when said amendment took effect, and has no retroactive effect, or application to any judgment rendered prior to its passage, and appeals from prior judgments are governed by the law applicable thereto, though not taken until after that amendment became effective.

ID.—APPEALS BY PEOPLE GOVERNED BY SAME RULE AS APPEALS BY DEFENDANT.—There is no difference as to the effect of an appeal taken by the people from a judgment rendered prior to the amendment, though taken subsequent to the amendment, and one taken by the defendant in the like case. The language of the statute concerning the time and method of appeals by the defendant and by the people is the same, and must be given the same effect.

ID.—GENERAL RULE OF STATUTORY CONSTRUCTION AS TO REMEDY BY APPEAL.—As a general rule, unless it is evident from the terms of a statute which gives or takes away, or modifies, the remedy by appeal, that it was intended to have a retroactive effect, it applies only to cases pending and undetermined at the time it goes into effect, and has no application to causes in which judgments have been entered prior to that time.

ID.—RULE ESPECIALLY APPLICABLE TO CONSTITUTIONAL JURISDICTION OF SUBJECT MATTER OF APPEAL.—Especially should the rule of statutory construction apply where the jurisdiction of the subject matter of the appeal in the appellate court is constitutional, and does not depend upon statutory enactment.

ID.—APPEAL BY PEOPLE FROM JUDGMENT ON DEMURRER TO INDICTMENT—DISMISSAL PROPERLY REFUSED.—Where an appeal was taken by the people from a judgment rendered on demurrer to the indictment, prior to the amendment of 1905, but taken subsequently to its passage in the mode provided by law when the judgment was ren-

dered, a motion to dismiss the appeal on the ground that it could not be so taken was properly refused.

ID.—CLAIM OF "ONCE IN JEOPARDY" NOT GROUND OF DISMISSAL—CONSENT TO DISCHARGE OF JURY WITHOUT VERDICT—WAIVER.—The claim that the defendant was "once in jeopardy" is not ground for dismissing the appeal, where the record shows that defendant both personally and by his attorney consented to the discharge of the jury without verdict, and waived the claim of "once in jeopardy," in order that he might interpose the demurrer to the indictment which was sustained by the court and from which the appeal is taken.

ID.—SUFFICIENCY OF INDICTMENT—CHARGE AGAINST BANK OFFICER—KNOWINGLY EXHIBITING FALSE REPORT TO DECEIVE BANK COMMISSIONERS.—An indictment under section 558 of the Penal Code, charging that the defendant, as officer of a specified banking corporation, knowingly exhibited to the bank commissioners an instrument of evidence, consisting of a false report of its affairs with intent to deceive them in respect to its affairs, charges a distinct offense under that section, the language of which is not limited to one "proposing to organize a corporation, or to increase the capital stock of any corporation."

ID.—TITLE OF SECTION NOT CONCLUSIVE.—The title of the section headline as "Frauds in Procuring Organization of Corporation or Increasing Its Capital" is not conclusive, and cannot limit the effect of any independent offense made penal by the terms of the section.

ID.—MATERIALITY OF FALSE REPORT OF AFFAIRS TO BANK COMMISSIONERS.—Under the bank commissioners' act a verified report may be required by them showing "the actual financial condition" of the bank, verified by oath of its president, secretary or cashier, and stating the total amount paid in money by stockholders for capital stock; and where the indictment alleges a report stating that the amount of capital paid in coin was $102,245, though it was not greater than the sum of $50,000, it shows a false report of its affairs intended to deceive. Coin is money, and a statement that a false amount has been paid in coin is misleading and deceiving to the bank commissioners.

ID.—OFFENSE AKIN TO PERJURY.—The crime denounced by the portion of the section under which the indictment was framed is akin to perjury, in which any fact which tends to disprove the ultimate fact in issue is material, and a general averment that the false testimony was material is sufficient, unless it affirmatively appears from other averments that it was immaterial. This rule applies to the indictment in question, which fully complies therewith.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge.

15 Cal. App.—21

The facts are stated in the opinion of the court.

U. S. Webb, Attorney General, and Louis Ferrari, for Appellant.

Campbell, Metson, Drew, Oatman & Mackenzie, and Carroll Cook, for Respondent.

HALL, J.—This is an appeal by the people from a judgment for defendant entered upon demurrer to an indictment charging him with a felony.

Respondent in his brief raises the point that this court has no jurisdiction of the appeal because not taken in accordance with the law in force at the time it was taken.

Upon being arraigned the defendant filed a demurrer to the indictment, which was by the court overruled. The defendant entered a plea of "not guilty," and the cause came on for trial. A jury was impaneled and some testimony taken, when, after certain objections made by defendant to the introduction of certain testimony had been sustained by the court, the court, upon motion of counsel for defendant, in which the district attorney joined, and with the consent of defendant given personally in open court, discharged the jury from further consideration of the cause. It further appears from the bill of exceptions that this course was taken in order that defendant might be allowed to withdraw his plea of "not guilty" and file a supplemental demurrer. Not only did the defendant in person and through his attorney consent to the discharge of the jury, but also in person and by his attorney waived any claim of jeopardy by reason of the jury having been impaneled. After the discharge of the jury defendant, with the permission of the court, withdrew his plea of "not guilty" and filed a demurrer, and the court thereupon, on the tenth day of June, 1909, gave its judgment sustaining the said demurrer. On the eighth day of July, 1909, the district attorney served, and on the ninth day of July, 1909, filed, a written notice of appeal from the judgment on demurrer. This notice was filed within the time allowed by the statute as it existed when the judgment was rendered (sections 1239 and 1240, Penal Code, prior to amendment of 1909).

At the time the judgment was rendered an appeal, either by the people or the defendant, might be taken by filing and serving a notice thereof, if from an order, within sixty days from its rendition, and if from a judgment, within ninety days from its rendition.

Intermediate the rendition of the judgment and the filing of the notice of appeal in this case, to wit, on the twenty-first day of June, 1909, there went into effect an amendment to the Penal Code, approved on the twenty-second day of April, 1909 (sections 1239 and 1240), providing for appeals, either by the people or the defendant, by oral announcement thereof, in open court, at the time of the rendition of the judgment or order appealed from.

It is claimed by the defendant that by the taking effect of the amendment, on June 21, 1909, providing that an appeal may be taken by oral announcement, in open court, at the rendition of the order or judgment, the right to appeal, at least by the people, from any judgment or order theretofore rendered, by the written notice, was at once cut off and ended, unless such appeal had been taken before the taking effect of the amendment. We think, however, the amendment to sections 1239 and 1240 (Penal Code) of 1909 should not be construed as having any such effect. The provision in said amendment that appeals may be taken either by the defendant or the people by oral announcement in open court at the time the order or judgment is rendered, plainly was intended as a rule governing the method of taking appeals from orders and judgments thereafter rendered. To give it the effect of cutting off and ending the then existing right would be to give the statute a retroactive effect, which should not be done except where such is the plain intent of the law.

"Unless it is evident from the terms of a statute, which gives, takes away, or modifies the remedy by appeal, that it was intended to have a retroactive effect, it applies only to cases pending and undetermined at the time it goes into effect, and has no application to causes in which judgments have been entered prior to that time." (2 Cyc. 524.)

Especially should this rule apply where, as in this case, the jurisdiction of the subject matter of the appeal, in the appellate court, is constitutional, and does not depend upon statutory enactment.

The rule that statutes that modify the remedy by appeal should not be held to apply to judgments rendered before the taking effect of the statute was followed in *Pignaz* v. *Burnett,* 119 Cal. 158, [51 Pac. 48], and which case, we think, must be held to be determinative of the point now under discussion.

In that case, after the entry of the judgment appealed from the law was amended so as to allow but six months after judgment for taking an appeal, instead of one year, the time allowed at the time of entry of judgment. The amendment took effect, as in the case at bar, sixty days after its passage. During all of this time the appellant might have taken his appeal without doubt. He did not take his appeal, however, until after the amendment to the law had gone into effect, which was nine months after the entry of judgment. The appeal was taken, however, within one year from the entry of judgment, which was in accord with the terms of the statute as it existed at the time of the entry of judgment, but not in accord with the terms of the statute as it existed at the time of taking the appeal. Upon a motion to dismiss the appeal it was held that the amended statute should be limited in its operation to judgments entered after it went into effect, and that it should not be given the effect of cutting off any right of appeal that existed when it went into effect.

We are unable to see any difference in principle between the case above cited and the case at bar. True, in the case at bar the appeal is by the people, and it is urged by appellant that we should hold that the right of the people to appeal was cut off, though we might not feel justified in holding the right of the defendant to be cut off under similar circumstances. We are unable to discover any merit in this suggestion. The language of the statute concerning the time and method of appeals by defendant and by the people is the same, and must be given the same effect.

Unless we are prepared to hold that, upon the taking effect of the amendment to section 1239 on June 21, 1909, a defendant against whom judgment was rendered on June 20, 1909, when the law gave him ninety days to appeal therefrom, lost such right to appeal entirely, unless he had taken such appeal upon the day of the judgment (which we are not prepared to do), we must hold that the amendment to sections 1239 and 1240 had no effect upon the time for taking appeals from

judgments and orders rendered at any time before the taking effect of such amendment. We think the right of appeal, both of defendants and the people, from orders and judgments rendered prior to the taking effect of the amendment of 1909 relative to appeals, was not affected by such amendment.

Defendant further urges that we should dismiss the appeal because, as he has been once in jeopardy upon the charge made in the information, he cannot again be placed upon trial therefor; and in support thereof cites *People* v. *Stoll,* 143 Cal. 689, [77 Pac. 818]. But in the case at bar the record shows that defendant, both personally and by his attorney, consented to the discharge of the jury without verdict, and waived the claim of once in jeopardy. The consent by defendant to discharge of jury without verdict is a bar to his plea of ''once in jeopardy.'' This has been assumed to be the correct rule in all the California cases upon the subject (*People* v. *Webb,* 38 Cal. 467; *People* v. *Horn,* 70 Cal. 17, [11 Pac. 470] ; *People* v. *Robert,* 114 Cal. 67, [45 Pac. 1016] ; *People* v. *Terrill,* 132 Cal. 497, [64 Pac. 894] ; *People* v. *Stoll,* 143 Cal. 698, [77 Pac. 818]—opinion of Justice Angellotti), and has been expressly so decided in other jurisdictions. (*Commonwealth* v. *Sholes,* 95 Mass. 554; *People* v. *Gardiner,* 62 Mich. 307, [29 N. W. 19] ; *People* v. *White,* 68 Mich. 648, [37 N. W. 34] ; *Arcia* v. *State,* 28 Tex. App. 198, [12 S. W. 599].)

The objection to the jurisdiction of the court to entertain the appeal is without merit, and we must examine into the correctness of the ruling of the court in sustaining defendant's demurrer to the information.

The demurrer is a general one, and also contains the statement, ''That said indictment does not substantially conform to sections 950, 951 and 952 of the Penal Code of the state of California.'' The only point sufficiently raised by the demurrer is as to whether or not the indictment states facts sufficient to constitute a crime (*People* v. *Bradbury,* 155 Cal. 808, [103 Pac. 215]), and this is the point discussed in the briefs.

The indictment is drawn under section 558 of the Penal Code, which is as follows: ''Every officer, agent, or clerk of any corporation, or of any persons proposing to organize a corporation, or to increase the capital stock of any corporation, who knowingly exhibits any false, forged or altered

book, paper, voucher, security or other instrument of evidence, to any public officer or board authorized by law to examine the organization of such corporation, or to investigate its affairs, or to be allowed an increase of its capital, with intent to deceive such officer or board in respect thereto, is punishable by imprisonment in the state prison not less than three nor more than ten years.''

The gravamen of the charge in the indictment against defendant is that he, as an officer of a banking corporation, to wit, the Market Street Bank, knowingly exhibited to the bank commissioners a false paper and instrument of evidence, to wit, a report of said bank, with intent to deceive said bank commissioners in respect to the affairs of said bank.

It is not attempted to state that defendant was proposing to organize the said corporation or to increase its capital stock, or that said report was made in relation to any proposed organization of such corporation, or the increase of its capital stock. The contention of defendant is that the only purpose of the statute is to punish for frauds in procuring the organization of corporations or increasing the capital stock of corporations; and that no person can be guilty of a violation of the section under which the indictment is drawn ''except persons who are proposing to organize a corporation, or to increase the capital stock of any corporation.'' In support of defendant's construction of the meaning of the language of the section he points to the fact that the section is preceded by a note or head-line as follows: ''Frauds in procuring organization of corporation, or increasing its capital.'' While such matters may be looked to in order to ascertain the meaning of a statute, where the operative language of the act is of uncertain meaning, such head-lines are of no value where the language of the act is plain and unambiguous in its meaning.

While the section in question is in several respects awkwardly worded, it plainly covers the case of an officer of a banking corporation who exhibits a false report of the affairs of the bank to the bank commissioners, with intent to deceive such commissioners with respect to the affairs of the bank. So far as this indictment is concerned, the section may be read as though written thus: ''Every officer, agent or clerk of any corporation . . . who knowingly exhibits any false

. . . book, paper, . . . or other instrument of evidence to any public officer . . . or board authorized by law . . . to investigate its affairs, . . . with intent to deceive such officer or board in respect thereto, is punishable by imprisonment in the state prison not less than three nor more than ten years.''

This is the language of the section that covers the case made by the indictment, and plainly this language is not limited to one ''proposing to organize a corporation, or to increase the capital stock of any corporation.'' By no fair reading of the entire section can its meaning be so limited.

The only other point urged by defendant in support of his demurrer and of the ruling of the court thereon relates to the materiality of the matter contained in the report exhibited by defendant to the bank commissioners and alleged to have been false.

The bank commissioners' act (Stats. 1903, p. 365) in force when the offense is charged to have been committed required the officers of a bank, whenever so required by the bank commissioners, to make a written report to said commissioners, verified by the oath of its president and secretary or cashier, showing its actual financial condition at the close of any past day specified by the commissioners, by stating among other things:

''Third.—The total amount actually paid, in money, by stockholders for capital stock. . . .''

The indictment alleges in apt language that the report exhibited by defendant to the bank commissioners was false, in this, that it showed that the amount of capital of said bank theretofore actually paid in coin was and amounted to the sum of $102,245, whereas in truth and in fact the amount of capital of said bank theretofore paid in coin did not amount to any greater sum than the sum of $50,000. It was further alleged in apt language that it became and was necessary and material for the bank commissioners to know from said report what amount of capital stock of said bank had been theretofore paid in coin.

It was contended by defendant that, inasmuch as the statute requires the report to the bank commissioners to state the total amount actually paid *in money* for capital stock, it was utterly immaterial how much was paid in *coin*. That ''the only material question was, how much was paid in money.''

It is thus conceded, as it must be, that the question as to what amount was paid in money was a material matter to be shown in the report. While all money is not coin, a statement that a certain amount has been paid in coin is in effect a statement that at least that amount has been paid in money. Such a statement, if true, shows and proves that at least the amount stated has been paid in money, for the word "coin" in such a statement means money of a particular kind. If it is false, and misstates the amount paid in coin, it is misleading and deceiving as to the amount paid in money. The crime denounced by the section under which this indictment was framed is akin to the crime of perjury. In perjury any fact which tends to prove or to disprove the ultimate fact in issue is material, and any testimony concerning such probative fact would be material to the issue to be determined. In perjury a general averment that the false testimony was material is sufficient (*People* v. *Rodley,* 131 Cal. 240, [63 Pac. 351]; *People* v. *Ennis,* 137 Cal. 263, [70 Pac. 84]), unless it affirmatively appears from other averments that it was immaterial. (*People* v. *Brilliant,* 58 Cal. 214.) The same rule, we think, is applicable to an indictment under section 558 of the Penal Code. The indictment under examination fully complies with this rule.

No other reason is suggested why the demurrer should have been sustained.

For the reasons above set forth this appeal is properly before this court, and the court erred in sustaining the demurrer to the indictment. The order and judgment are therefore reversed, with directions to the trial court to overrule and disallow the demurrer.

Kerrigan, J., and Lennon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1911.