[Crim. No. 382. First Appellate District.—April 1, 1913.]

THE PEOPLE, Respondent, v. A. F. MARTEL, Appellant.

CRIMINAL LAW—FALSE REPORT BY BANK—EVIDENCE.—In a prosecution of a bank president for rendering a false report as to the amount of the paid-up capital, entries in the books of the bank, made at a time when he had no connection with it, are hearsay and not admissible against him, and therefore they cannot be used as a basis for the testimony of an expert accountant.

ID.—TESTIMONY AS TO INTENT OR BELIEF.—In a prosecution of a bank president for making a false report to the bank commissioners, his own testimony that he believed the report to be true, or that he had no intent to deceive the commissioners, is admissible.

ID.—TESTIMONY SHOWING ABSENCE OF INTENT TO DECEIVE.—In a prosecution of a bank president for making a false report to the bank commissioners, where a specific intent to deceive is an essential ingredient of the offense, the defendant should be allowed to prove any fact tending to show that he had no such intent, or that he did not knowingly make a false statement.

ID.—INSTRUCTION COVERED BY OTHERS.—Requested instructions are properly refused if they are substantially given in other instructions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Frank H. Gould, W. H. H. Hart, F. C. Drew, and Vincent Surr, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

HALL, J.—Defendant was charged under section 558 of the Penal Code with knowingly and with intent to deceive, exhibiting to the bank commissioners a false report of the Market Street Bank, as president thereof, wherein it was stated that the capital of said bank theretofore paid in coin amounted to the sum of $102,245, whereas, as it was alleged, the amount of the capital of said bank theretofore paid did not amount to any greater sum than fifty thousand dollars.

Upon trial defendant was convicted, and upon judgment being rendered duly appealed to this court from the judgment and order denying his motion for a new trial.

The indictment is the one that was passed upon by this court in *People* v. *Nash,* 15 Cal. App. 320, [114 Pac. 784].

It was not alleged in the indictment nor claimed at the trial that the report, which was made by defendant and Nash to the bank commissioners, was false in any respect other than as to the statement of the amount of the capital paid in coin. It was not alleged, nor claimed at the trial, that the report did not correctly set forth the then assets and liabilities of the bank. The record shows that included in the whole amount of capital stock issued at the date of the report was one lot issued March 23, 1903, amounting to fifty thousand dollars, and another lot issued November 18, 1905, amounting to thirty-five thousand dollars. It was these two issues that the people claimed were not fully paid for either in coin or in money. In order to make up capital paid for in coin or money to the amount of $102,245 it was necessary to include these two issues of fifty thousand dollars and thirty-five thousand dollars respectively. The report which was filed with the bank commissioners August 26, 1906, signed and verified by defendant as president, and by Nash as secretary of said bank, purported to give a report and statement of the condition of the bank as of August 15, 1906, and among other things stated that the amount of capital theretofore paid in coin amounted to $102,245.

The people called the bookkeeper of the bank and by him identified a large number of books as the books of the bank kept in the regular course of business.

The prosecution was then allowed to prove by an expert accountant who had examined the books, and who testified from his notes, that under date of March 23, 1903, an issue

of stock in the sum of fifty thousand dollars was made which, according to the entries in the books under that date, was in exchange for certain notes designated as loans No. 1 for forty thousand dollars, No. 2 for four thousand seven hundred dollars, No. 3 for eight hundred and fifty dollars, No. 4 for five hundred dollars, No. 5 for one thousand dollars, and No. 6 for one thousand dollars. This evidence was objected to upon the ground that it had not been shown that the defendant was at that time connected with the bank, and again after the evidence was in, the defendant moved to strike it out upon the same ground. The court ruled against the defendant. Not only had it not been shown that at the time of this issue of the stock and of the book entries from which the witness testified, that the defendant had any connection with the bank, but it clearly appeared subsequently that his first connection with the bank occurred May 7, 1903, and it does not appear that he at that time became anything more than a stockholder. It was admitted that he was president of the corporation during the year 1906, but when he became such does not appear.

We think that the court erred to the substantial injury of defendant in the rulings above set forth. The entries in the books were not made by the witness who gave the testimony based thereon, but were made by another person, who was in no way connected with defendant at the time the entries were made. The party making the entries was not at the time he made such entries in any way under the control or direction of defendant. As to the defendant the entries were purely extra-judicial statements, made by a third party, and were hearsay, and for that reason could not be used as original evidence as against defendant of the facts therein stated. In consequence such entries could not be used as a basis for the testimony of the expert accountant, having no knowledge of the facts, as to what such entries showed as to payment for the stock to which they related.

Reliance is placed by respondent, to sustain the action of the trial court, upon *San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74, [53 Pac. 410]. Reynolds was sued by the corporation for the embezzlement of moneys of the corporation by him while acting as its general manager, and the books of the corporation, kept by its bookkeeper, were introduced in evidence

against him. But, as is pointed out in the opinion, the book-keeper, at the time he made the entries, was under the control and direction of Reynolds, and many of the entries were made under the express direction of Reynolds, who, under the terms of his employment, was specially charged with the duty of keeping or causing to be kept correct accounts of the business of the corporation of which he was manager. It was upon these considerations that it was held that the books of the corporation were admissible against Reynolds.

The reasoning of that case does not include such a case as the one at bar, where the entries were made by the bookkeeper at a time when the defendant, against whom the entries were used as evidence, had no connection whatever, either with the corporation or the bookkeeper. Upon the contrary, the reasoning in the Reynolds case plainly would exclude such a case.

That this evidence was very important and probably had an important effect in producing the verdict of guilty is manifest from the fact that it is claimed by the prosecution that the entries in the books made in March, 1903, show that the fifty thousand dollars of stock was issued without being then paid for except by loans, which it is likewise claimed—and the claim finds support in the record—remained unpaid to the extent of twenty-one thousand four hundred dollars at the time of the making of the report to the bank commissioners.

Complaint is also made that the court unduly restricted defendant in regard to offered testimony bearing upon the question of his knowledge as to the correctness of the report and of the books, and as to his intent in presenting the report.

Upon this head we deem it sufficient to say that in all cases where, as in this charge, a specific intent to deceive is an essential ingredient in the offense, the defendant should be allowed to prove any fact tending to show that he had no such intent, or that he did not knowingly make a false statement. His own testimony that he believed the report to be true, or that he had no intent to deceive the bank commissioners, is admissible. Its weight is for the jury.

The objection made by the district attorney that the offered testimony was "purely self-serving" is not a valid objection to its admission. The testimony given by a defendant in a criminal case is usually "self-serving;" or intended so to be, but that is not a ground for its rejection. Self-serving extra-

judicial statements are not admissible, but it is no valid objection to testimony given under oath in court that it is self-serving.

Appellant also urges that the court erred in refusing certain requested instructions. Most of them were substantially given in other instructions, and we find no just ground for complaint as to the instructions given or refused.

It is also earnestly urged that upon the whole case the evidence is insufficient to support the verdict.

In view of the fact that we are of the opinion that the court erred to the prejudice of defendant in a substantial and important matter going to the proof of his guilt, we deem it sufficient upon this head to say that after an examination of the entire record, including the evidence, we think the ends of justice require that defendant be granted a new trial for the error above pointed out.

The judgment and order are reversed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on May 31, 1913.