[Crim. No. 3042. In Bank.—March 2, 1928.]

THE PEOPLE, etc., Respondent, v. ABNER DOBLE, Appellant.

Carey Van Fleet and Robbins & Van Fleet for Appellant.

512

U. S. Webb, Attorney-General, and William F. Cleary and Emery J. Mitchell, Deputies Attorney-General, for Respondent.

PRESTON, J.—Appellant was convicted of conspiracy to violate the Corporate Securities Act (Deering's General Laws, Act 3814, p. 1406); also on four counts charging substantive offenses in violation thereof. He has appealed from the judgment and order denying his motion for new trial.

The indictment in count one charges a conspiracy to violate said act by taking subscriptions in the state of California for shares of stock of the class A common capital stock of Doble Steam Motors Corporation, a Delaware corporation, without a permit so to do from the corporation commissioner of the state of California. Among other overt acts there was charged the taking of six specific subscriptions to said stock without a permit. The taking of each of said six subscriptions was made a separate count in the indictment and it was upon four of such counts that appellant was convicted as above noted. Five defendants were charged in said indictment, to wit: Abner Doble, W. A. Doble, Harold E. Haven, F. G. Cox, and W. E. Barnard. Cox, Haven, and Barnard plead guilty and testified for the People on the trial of appellant. The other defendant, W. A. Doble, was tried jointly with appellant but was acquitted. Under the proof the offenses charged, if committed at all, were committed between July 1 and August 4, 1923. This fact should be noted as the conspiracy indictment fixes no time for its duration and no time for its termination.

It is not contended that any stock certificates were actually issued at any time by said corporation during the period covered by the indictment in excess of the permit held by it. Neither is it claimed that at any time covered by said indictment bad faith was exercised in contracting for the sale of any stock in excess of such permit. Nor is it claimed that appellant did anything at any time personally to procure such excess subscriptions. The most that is or can be claimed in this connection is that appellant knew or should have known that such permits as the corporation had were being exceeded by the fiscal agent in charge of sales, to wit,

the said F. G. Cox. Appellant strenuously denied all knowledge of the taking of any such excess subscriptions and declared that if any were so taken they were in violation of his express orders forbidding such action. He was, therefore, entitled to a declaration from the trial court of the legal principles applicable to such a situation.

Appellant was president of the corporation but was actively engaged only in another department of the business and had but little to do with the stock sales department. Permits to sell stock to the extent of one hundred thousand shares were issued to the corporation and had not been revoked during the period covered by the indictment. Pursuant to such permits, on or about October 28, 1922, the corporation made a contract with said F. G. Cox constituting him its fiscal agent, empowering him to take subscriptions for the sale of its stock and requiring him to make reports and remittances at certain stated times. This contract did not authorize or contemplate a violation of the limit set by the permits. On June 19, 1923, the corporation, acting in apparent good faith, applied in writing to the corporation commissioner for an additional permit. This application was pending thereafter until August 9, 1923, upon which date the corporation, realizing that it would not be granted, withdrew it. The court properly charged the jury that there was no issue of fraud involved in the transaction; neither was there pecuniary loss suffered by others involved therein and these elements were not to be considered in their deliberations and conclusions. The jury in returning a verdict of conviction recommended the defendant to the extreme mercy of the court. It will thus be seen that the charge as to this defendant was technical and had little moral substance in it. The active persons in the plan acknowledged their responsibility by their pleas of guilty.

Said F. G. Cox kept, in connection with his contract of employment and other business as a stock broker, a combined set of books, some in Los Angeles and others in San Francisco. An expert on behalf of the prosecution was allowed access to certain books supposed to be the books of Cox and from them, in connection with the books of the Doble corporation, a summary was compiled and introduced in evidence, primarily for the purpose of showing that an

excess of stock subscriptions had been taken and fixing the approximate date of the beginning of such excess subscriptions, which date was by him declared to be June 19, 1923. This summary was admitted in evidence over the strenuous and repeated objections of appellant that the books from which it was made had not been properly authenticated nor had they been received nor were they admissible in evidence. The books themselves were never received in evidence although those records from which the summary was taken were apparently accessible to the defense for inspection and were marked as exhibits for identification. These books, if properly authenticated, would have been a proper place to resort for proof of the amount of outstanding subscriptions as a basis to be followed by proof of appellant's connection therewith, if any, and knowledge thereof, if any, but the evidence fell far short of showing proper authentication of the accuracy and reliability thereof.

No witness testified that the entries from which the summary was made were genuine, true, or correct. No witness was produced who knew or claimed to know whether said entries were true or correct. A witness Smith, who worked for Cox, gave part of his time to the books and had complete charge of them under the supervision of a regular bookkeeper some months after the offenses charged, but this witness could not and did not testify as to the authenticity or accuracy of the entries prior to the time he took full charge thereof in the manner stated. Witness Penberthy testified only as to the dates between March and June 23, 1923, which said dates antedated the offenses charged. The co-conspirator Barnard, sales manager, testified that he thought the books were accurately kept, but he had no first-hand knowledge of the matter. To this showing should be added the testimony of Cox himself that the books for a part of the period in question were kept under his general supervision and were at all times acted upon by him as correct. This showing might have been sufficient for the introduction in a civil action involving Cox of the books, but the fact remains that the court did not admit them but expressly or impliedly held the showing insufficient and appellant strenuously and repeatedly objected to admission of a sum-

mary thereof until the books themselves were first in evidence.

It is manifestly error to admit in evidence, under section 1855, subdivision 5, of the Code of Civil Procedure, a summary of books where the books themselves are not shown to be admissible in evidence. We, of course, are not intending to hold that the books in each case must be actually received in evidence to warrant the introduction of such summary so long as they are available for use of the opposing party, but their introduction in evidence is the safest rule, and it is not a technical objection to require that a showing be first made that such book entries are entitled to admission if they are actually offered. This we understand to be the effect of such cases as *Shields* v. *Rancho Buena Ventura*, 187 Cal. 569 [203 Pac. 114].

Further, it will be seen that a more serious error was committed when it is recalled that appellant was in nowise connected with the said entries, it being expressly admitted that he had no knowledge whatsoever of the books and had no custody or control whatsoever over them. The entries were not made by Cox and were therefore at most the acts of subagents and ordinarily would not be binding even in a civil action on appellant (Civ. Code, secs. 2349–2351).

It is contended, however, that said books and the summary thereof were admissible as the acts of an agent as to the substantive offenses charged and as the acts of a co-conspirator as to the offense of conspiracy. If we admit that Cox was the agent of appellant, this might allow his declarations, made within the scope of his agency, to be admitted in a civil cause, but human liberty does not rest upon so weak a foundation. A principal, in order to be held criminally liable, must be shown to have knowingly and intentionally aided, advised, or encouraged the criminal act committed by the agent. In the absence of proof to this extent, the summary of the books should not have been received as a declaration binding upon appellant and certainly, if other evidence was deemed sufficient to warrant a finding that appellant knew of the contents of the books, the smallest consideration of the rights of appellant, in view of his denial of such knowledge, would have required the court to have given in fact or in substance appellant's

requested instruction No. 62, which it refused to do. This request was as follows:

"You are hereby instructed that before one can be convicted of a crime by reason of the acts of his agent, a clear case must be shown. The civil doctrine that a principal is bound by the acts of his agent within the scope of the agent's authority has no application to criminal law. If a principal is liable at all criminally for the acts of another, such liability must be founded upon authorized acts. Authority to do a criminal act will not be presumed. You are instructed that six of the charges contained in the indictment are based upon alleged violations of the Corporate Securities Act without the element of conspiracy. You are therefore instructed that unless you find from the evidence beyond a reasonable doubt that the co-defendants F. G. Cox and W. E. Barnard were the agents of the defendants Abner Doble and W. A. Doble, Jr., in the perpetration of the acts alleged in said six charges and were directly authorized to commit said alleged acts by the defendants Abner Doble and W. A. Doble, then you must find said defendants Abner Doble and W. A. Doble not guilty of said six charges."

In *People* v. *Green*, 22 Cal. App. 45, 50 [133 Pac. 334, 336], it is said: "Before one can be convicted of a crime by reason of the acts of his agent a clear case must be shown. The civil doctrine that a principal is bound by the acts of his agent within the scope of the agent's authority has no application to criminal law. (1 McLain on Criminal Law, sec. 188.) While false pretenses may be made to an agent of the person defrauded, yet when made by an agent they must be directly authorized or consented to in order to hold the principal, for authority to do a criminal act will not be presumed (1 McLain on Criminal Law, sec. 683)." (See, also, *People* v. *Blackman*, 127 Cal. 248 [59 Pac. 573]; 21 R. C. L., secs. 113, 115, 116, pp. 934–936.)

■ But it is asserted that these books were admissible as a declaration of Cox, a co-conspirator, made during the period of the conspiracy and in furtherance thereof. If the books were in fact the acts or declarations of Cox, and the record otherwise showed evidence warranting the finding that a conspiracy existed between the appellant and Cox, this position would be sound, provided always that the jury was told that the acts and declarations

of a co-conspirator were not binding unless and until, independent of such declarations and acts, a conspiracy had been shown beyond a reasonable doubt to exist, and in no case should such declarations be received as proof of the conspiracy. (Code Civ. Proc., sec. 1870, subd. 6; *People* v. *Irwin*, 77 Cal. 494, 502 [20 Pac. 56].) *People* v. *Zimmerman*, 3 Cal. App. 84, 87 [84 Pac. 446], is not opposed to, but is in accord with, this holding. The order of the proof is, however, in the discretion of the court (*People* v. *Stokes*, 5 Cal. App. 205, 209 [89 Pac. 997]; *People* v. *Donnolly*, 143 Cal. 394 [77 Pac. 177]; *People* v. *Compton*, 123 Cal. 408 [56 Pac. 44]). The above was not done and the jury was thus allowed to consider *ex parte* acts of the agents of a person to prove a conspiracy between such person and the appellant. Therefore it was error to receive said testimony over objection and without limitation upon any hypothesis.

It should also be observed that said summary received in evidence was compiled not only from the Cox books, but also from the books of the Doble corporation and from a comparison of the two sets of books. But again appellant denied all knowledge of the entries in the books of said corporation, in so far as the same were summarized and received in evidence. The summary of the Doble corporation books was apparently admitted upon the theory that the set of books from which the entries were taken consisted of books required by law to be kept and hence admissible for that reason. While the books were admissible for what they might show as to the excess of subscriptions over the permits, still, in view of the repeated claims of appellant that he knew nothing of their contents, he was entitled to an instruction to the effect that an officer of a corporation is not criminally liable for the acts of other officers or agents thereof unless he directly authorized or consented to such acts. An instruction to this effect was requested by appellant in his request No. 61, and refused. "If there was evidence that the entries were made by the defendant or under his direction, or with his knowledge, they would most undoubtedly be competent and important evidence against him. They are clearly inadmissible, except as admissions, or as acts done in furtherance of the crime charged against him. His knowledge and complicity in falsifying the books must first be shown. The presumption

of innocence with which the law clothes the defendant is sufficient to overcome the presumption which might prevail in a civil case, that he knew because it was his duty to know. As before stated, he is not to be punished criminally for negligently performing his duty." (*People* v. *Blackman, supra,* 127 Cal., at page 253 [59 Pac. 574]. See, also, *People* v. *Martel,* 21 Cal. App. 573 [132 Pac. 600].)

In the case of *Worden* v. *United·States,* 204 Fed. 1, 9 [122 C. C. A. 315], Worden and others were jointly indicted on a charge of conspiracy to defraud the United States in the purchase of certain public lands through alleged "dummy" entrymen for the benefit of plaintiffs in error and the J. H. Worden Lumber etc. Company, of which said Worden was president and manager. The books of account, both of Worden and of the company, played an important part on the trial, the opinion of the court being that if the evidence afforded by them were eliminated the proof would be insufficient to support a conviction. It was held that sufficient connection was not shown between Worden and the books of the lumber company to make the entries therein competent evidence as against him, and the judgment was reversed, the court saying: "It is manifest that Worden would be prejudiced by an improper treatment of the entries on the company's books as competent evidence against him. Unless the mere fact of Worden's presidency and management of the company raised a legal presumption of his acquaintance with the book entries, thus putting upon him, in defense of a charge of crime, the burden of rebutting such legal presumption, we think the books cannot, in the peculiar state of this record, be held as matter of law competent evidence against him. We have found no persuasive decision sustaining such legal presumption (in the absence of statutory requirement of correct bookkeeping), except on proof that the books were kept under the instruction, direction or supervision of the person against whom the entries are offered, or that such person presumably had examined the books or in some way obtained actual knowledge of the entries."

In the case of *McDonald* v. *United States,* 241 Fed. 793, 800 [154 C. C. A. 495], one Hendrey, the president of a Memphis bank, with plaintiffs in error and six others, was indicted for using the mails in furtherance of a scheme

to defraud by organizing a company, called a bank, but in substance a holding company or chain of banks, and selling stock in and getting deposits therefor by false representations. Upon various errors alleged the verdict and sentence against Hendrey were reversed, the court, among other things, holding as follows: "Evidence was received as to the contents of the books of the Memphis bank, of which Hendrey was president. This bank was a corporation, and the contents of the books of the corporation could not be put in evidence in a criminal prosecution against the president without a more direct showing of his personal responsibility for the bookkeeping than we observe here. (*Worden* v. *United States*, 204 Fed. 1, 9 [122 C. C. A. 315].)"

It will thus be seen that in the trial of an offense highly technical in its nature serious prejudicial errors occurred affecting the substantial rights of appellant. Without the summary above referred to the whole fabric of the case for the People would have been weak and unconvincing.

But beyond all this a contemplation of the record in this case convinces one that in all probability appellant was convicted not upon the pertinent evidence as to the charges laid, but upon evidence relating to a transaction commonly called in the record the "Portland transaction," which occurred subsequent to the offenses charged in the indictment, or, in other words, there was in all probability what is known as a trial upon one offense and a conviction upon another. It is noted that soon after August 9, 1923, a plan or scheme was put in operation which the prosecution asserts with much show of probability was for the purpose of absorbing the excess subscriptions then on the books of said Cox or of said corporation. This so-called Portland transaction consisted, in a word, of the opening of headquarters in Portland, Oregon, and the attempted perfecting of sales thereat to said Cox of large blocks of shares of the capital stock of said corporation, Cox thereafter using the stock so acquired to satisfy the subscriptions that he had upon his books in excess of the permits granted. It is asserted, and we think correctly, that the sale was what is commonly known as a "wash" sale, and in reality constituted the most serious misconduct shown by the record. This scheme or plan was carried out very largely by the defendants in this cause, who entered pleas of guilty. The connection of ap-

pellant therewith was slight and largely shown by circumstantial evidence. However, the whole plan, regardless of the meager connection of appellant with it, was unfolded in great detail and occupied by far the most prominent place in the trial of the case. It is said that one-third of the record is devoted to this subject, and an examination thereof shows that all of the rebuttal and surrebuttal testimony was directed to it. It had other damaging features, such as the predating of certain instruments, intended doubtless to create a record contrary to the true facts. Appellant denied personal connection with the scheme and all intention on his part of using it to cover up any oversubscriptions, and contended that it was as to him a legal one for the purpose of pushing the sale of stock of the corporation in other quarters than the state of California. The treatment by the court and prosecution of the Portland transaction upon trial of the case was as though it were a part of the conspiracy charged in count one of the indictment and the acts and declarations of the alleged former co-conspirators, without the presence of appellant, were repeatedly and indiscriminately received in evidence. We have noted above that the conspiracy charged ended not later than August 4, 1923. The Portland plan originated subsequent to August 9, 1923, and after the corporation had knowledge that its application for an additional permit would be denied. It, therefore, cannot be said that the Portland transaction was in any sense a part of the conspiracy charged in the indictment; hence it was palpable error to receive in evidence acts and declarations of alleged former co-conspirators made, after the conspiracy charged had terminated, without the knowledge or presence of appellant. This is hearsay testimony and its inadmissibility is so elemental in the law of conspiracy that we need not pause for citation of authority. Any material act of the appellant himself committed after August 4, 1923, could have been received in evidence, if limited in its application to the offense previously charged, such as proving system or motive. It is also true that any act committed by appellant after August 4th which would tend to show previous knowledge of the existence of oversubscriptions would have been admissible against him, but such admission would have to be carefully limited by the court to its bearing upon the previous offense, and the

jury told that appellant was not upon trial for the Portland transaction.

Appellant contended that the Portland transaction was thoroughly legal and justifiable and to that end tendered numerous instructions which were all refused by the court, and the Portland transaction went to the jury without a word of explanation of any kind and without a declaration of the principles of law applicable to the situation disclosed by this evidence. It is useless to add that after admitting the evidence the court should have declared the limitations upon it and also the legal principles controlling the whole transaction so that appellant, if believed by the jury, might have had the benefit thereof. It is our view, from consideration of the record, that but for the introduction of this testimony and the failure of the court to limit it or declare the principles applicable, in all probability appellant would not have been convicted. These errors were, therefore, prejudicial. This conclusion renders it unnecessary to consider further assignments of error.

The judgment is reversed and the cause remanded for a new trial.

Richards, J., Shenk, J., and Seawell, J., concurred.

Langdon, J., concurred in the judgment.

Rehearing denied.

Curtis, J., and Waste, C. J., dissented.