[Crim. No. 2252. Second Appellate District, Division Two.—May 24, 1933.]

THE PEOPLE, Respondent, v. GEORGE C. BISBINES, Appellant.

Frederic H. Vercoe for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton for Respondent.

PARKER, J., *pro tem.*—Defendant was convicted of the crime of burglary and the degree thereof found to be second. From the judgment following he appeals.

The case was tried without a jury, defendant and the People having waived a jury trial. The only point raised is as to the sufficiency of the evidence.

The place burglarized was a candy store and the property stolen consisted entirely of cash. ·The candy store was a going concern, though closed after 10 o'clock at night. The store was in charge of a young lady. She had taken the store money and hid it away on the night of Friday, February 12th, before closing. The hiding place was some boxes placed under or near the shelving or counters. .On opening the store the next morning it was discovered that the money was stolen. There was sufficient evidence to indicate that whoever stole the money had knowledge of the hiding place, for the reason that there was no apparent disturbing of anything else in the store and no evidence of any disarrangement of goods or fixtures, as would indicate a random search.

The store was located next to a moving picture theater. There was evidence indicating that a view of the inside of the store could not be had directly from the street on account of the location of showcases, etc. Meaning by this, that a person standing on the outside in the street could not observe the movement of the clerk at closing time or watch her hide the money. However, it was shown that such a view could be obtained from certain positions on the theater premises, next door. As stated, the burglary took place between 10 o'clock P. M. of February 12th and 7:30 A. M. of February 13th, in the year 1932. The defendant had been employed in the theater for a period of some seven months prior to February 9th, on which date he ceased his employment. Without further noting this fact it will be understood that all of the times mentioned are in the year 1932. This day, February 9th, was a Tuesday. On Wednesday night after the theater is closed it is customary for the employees to change the display on the outside. This occupation usually takes three or four hours. Here it might be mentioned that defendant has a brother who was also employed at the theater and who remained after defendant quit. On Wednesday night the defendant attended a party

until a late hour and upon leaving went to the theater to see if he could find his brother, believing that the latter would be still there engaged in changing the exterior display. When the defendant arrived there it was about 1:30 Thursday morning. After looking a short time for his brother and not finding him, defendant testified that he left the place and did not return again that day or Friday. The record further discloses that the entrance to the candy store was effected through a back door. This door leads into a basement or underground space which can also be reached through the theater. The imprint of a hand was found on the door. Such imprint disclosed the little finger side of the hand and contained all of the identification marks used by experts in comparisons. This imprint tallied with an admitted imprint of the defendant's hand and no serious point is made that the imprint on this door was not made by the hand of defendant. The door was fastened by a small bolt, apparently of no great strength and across a narrow passageway from the door was a wall, against which a brace might be obtained by which hand pressure could be applied. The testimony was that this imprint could have been forty-eight hours old but not older, and it was taken about 11 o'clock on the morning of February 13th. Defendant admitted that while on the premises in the course of his employment he may have frequently placed his hand on the door, owing to the poor lighting conditions in the passageway through which he had legitimate occasion to pass. But he contended he had not been there within forty-eight hours of the time the hand prints were found. Nevertheless, the prints of his hand, according to the testimony, had been placed on the door within that time. After the arrest of defendant he was confronted by his brother who, in the presence of a police officer, accused defendant of the crime. The accusatory language was as follows: "You know you told me you went in there and got that money; that the fellows in the theater were talking about getting it, and you said that you had better go in and get it before they did," to which defendant made no reply.

The law is well settled in this state that when a defendant, under conditions which fairly afford him an opportunity to reply, stands mute in the face of an accusation of crime, the circumstance of his silence may be taken

against him as evidence indicating an admission of guilt. (*People* v. *Egan,* 77 Cal. App. 279 [246 Pac. 337], and cases therein cited.)

■ Summing up, we have evidence that the burglary had been committed and that defendant had a familiarity with the premises burglarized to a degree not possessed by the general public; that defendant was one of a small group having access to the rear of the store through his connection with the theater and his familiarity with the premises; that imprints of defendant's hand were found on the door, which imprints were of recent impression. And on top of this, there is the final evidence of defendant's implied admission of guilt when accused by his own brother. We, of course, do not consider the testimony opposing this, for the all-sufficient reason that we do not try anew the charge.

As a matter of law the evidence detailed was sufficient to establish a degree of proof satisfying the mind and conscience of one sworn to act conscientiously upon it.

Incidentally, the defendant admitted prior conviction of a felony. His own testimony was thereby impeached, and likely the trial judge gave it little credence.

The judgment is affirmed.

Works, P. J., and Stephens, J., concurred.