[Crim. No. 1705. First Appellate District, Division One.—July 28, 1933.]

THE PEOPLE, Respondent, v. T. RUSSO, Appellant.

Forrest H. Bailey for Appellant.

U. S. Webb, Attorney-General, and Siebert L. Sefton for Respondent.

KNIGHT, J.—Appellant was found guilty of murder in the first degree, and in accordance with the recommendation of the jury was sentenced to imprisonment for life in the state prison. From the judgment of conviction and the order denying his motion for a new trial he prosecutes this appeal, the main contention made being that the evidence at most establishes only the crime of manslaughter; that the verdict of first degree murder was the product of an undue prejudice created against him by certain evidence about which he admits no complaint was made during the trial, but which he now claims was inadmissible, and by the emphasis placed on such evidence by the district attorney in his argument to the jury; and he asks, therefore, that the judgment of conviction be modified by reducing the crime of which he was convicted to manslaughter or that said judgment be reversed and he be granted a new trial. The trial judge, after having given careful consideration to the same contention in hearing the motion for new trial, determined that the verdict of the jury should be allowed to stand, and from our examination of the entire record we find nothing therein to prove that the conclusion reached by the trial judge is not well founded.

The circumstances leading up to and immediately following the homicide were as follows: Russo, the appellant, and Taylor, the man appellant killed, were itinerant laborers working in the fruit industry in the vicinity of Brentwood, Contra Costa County. With several others, named Iesiello, Green, Garland, Haley and Hall, they had been camping for two weeks or more in the railroad stock pens or corrals near the Brentwood station. On Saturday, August 13, 1932, the day preceding the homicide, Russo, Iesiello and Green purchased an old automobile, and the next morning, accompanied by Hall and Haley, started out in the machine intending to drive to a swimming pool. Taylor and Garland remained at the camp. Shortly before noon a man named Coatney called at the camp to see Green, but finding him

absent stayed and visited Garland. Meanwhile, on the way to the swimming pool, an argument arose between the five men and Haley and Hall quit the party, Haley returning to the camp. Upon entering the stock pen he took a coat belonging either to Russo or Iesiello from the fence and immediately departed, his whereabouts afterwards being unknown. About an hour later Russo, Iesiello and Green returned. Coatney, Garland and Taylor were there at the time and Russo immediately started an altercation with Taylor about the missing coat, Taylor replying in substance that he had about all he could do "to look after his own stuff". At the same time Taylor took his own coat from the fence and placed it over his arm. Continuing the altercation and advancing toward Taylor in a menacing attitude, Russo called Taylor the vilest kind of a name, and told him "to get the hell out of the camp", that if he did not do so he, Russo, would kick him out. As Russo continued to advance toward Taylor, the latter threw his coat to one side and Russo immediately struck him. A fist fight followed and soon after it started Iesiello ran up behind Taylor and struck him on the head with a bucket. Garland then interfered to drive Iesiello away, which started another encounter between the latter two. They fought their way out of the pen, and Iesiello, who was much the younger man, picked up a club and struck Garland with it. Russo and Taylor, continuing their fight, eventually grappled each other and fell to the ground; and at this juncture Russo commenced to stab and cut Taylor with a paring knife having a blade some four or more inches long, which, unknown to any of the parties present, Russo had picked up from the top of a box in the pen just as the fight started or during its progress As soon as Taylor was stabbed he quit fighting, and Russo jumped up, yelled something in a foreign language to Iesiello, both of whom were Sicilians, and ran toward the automobile, at the same time commanding Green to get in the automobile and bring with him a sack of provisions which was hanging in the pen. Immediately Iesiello stopped fighting with Garland and rushed to the automobile, and Russo, Iesiello and Green drove away in it. Both Coatney and Garland realized that Taylor had been hurt, but did not know he had been stabbed; and Coatney left at once to summon medical aid. As soon as Coatney had gone Taylor

succeeded in getting up and staggered out of the stock pen. Garland went to his assistance, but Taylor dropped to the ground and died almost instantly. Garland then discovered that Taylor had been stabbed. In this connection the evidence shows that he was stabbed four times, once near the heart, once just below the ribs on the left side, again in the back on the left side near the kidneys, and in the left hip. The evidence further shows that the wound in the hip was not a clean cut, the knife having been thrust into the flesh and then ''churned around'', as one witness described it, cutting much of the flesh from the bone. Some four or five days later Russo was arrested in a camp in the river bottom near Turlock. Iesiello had disappeared. The circumstances showing the manner in which Taylor was killed were established by the testimony of Coatney, Garland and Green. So far as the record shows Russo made no statement at any time with reference to the killing, nor did he testify at the trial. Evidently he rested his case on the cross-examination of the witnesses for the prosecution.

The distinction between murder and manslaughter is clearly pointed out by the code sections, and the jury was fully instructed accordingly; that is to say, murder is the unlawful killing of a human being with malice aforethought (Pen. Code, sec. 187) ; while manslaughter is the unlawful killing of a human being without malice (Pen. Code, sec. 192). And the code sections proceed to declare that such malice may be express or implied; that it is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature, and that it is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned or malignant heart. Continuing, the code sections declare that all murder which is perpetrated by means of poison, or lying in wait, torture or any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate certain enumerated felonies, is murder of the first degree (Pen. Code, secs. 188 and 189). And it is well settled that although the intent to kill must be the result of deliberate premeditation, and must be formed upon pre-existing reflection, there need be no appreciable space of time between the intention to kill and the

act of killing; they may be as instantaneous as successive thoughts of the mind.

It will be seen from the evidence hereinabove narrated, which is without any substantial conflict, that Russo was the aggressor; that after starting the fight he took an unfair advantage of his adversary by obtaining possession of and using a knife. Furthermore it shows that Taylor was not armed with any instrument or weapon whatever, but was fighting fairly with his fists. In other words, there is nothing in the record indicating that Russo used the knife in self-defense or that he was in any danger of great bodily harm when he began to stab Taylor therewith. It is true, as appellant contends, that the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion, is manslaughter and not murder. But in the present case the fact that appellant obtained possession of the knife at the beginning of the fight or during its progress, and stabbed Taylor three times in vital parts of the body, and the further fact that he used the knife in an unusually cruel manner in inflicting the fourth wound, together with the other circumstances above mentioned, showing that he started the fight with little or no provocation and carried it on by unfair means, were sufficient to justify the belief on the part of the jury that there was manifested a deliberate intention on his part unlawfully to take away the life of a fellow creature and that the circumstances attending the killing showed an abandoned and malignant heart. It is beyond the power of this court, therefore, to interfere with its verdict finding appellant guilty of first degree murder.

The evidence about which appellant complains as being inadmissible consists mainly of certain photographs, introduced by the prosecution, of Taylor's body, showing the location of the wounds inflicted by the knife, the testimony as to the vile name appellant called Taylor at the commencement of the altercation, and the testimony given by Green, Garland and Coatney in redirect examination by the prosecution showing that previously Russo had engaged in unprovoked altercations with them and others in the camp, from which it would appear that he was possessed of a quarrelsome disposition. As already stated, appellant concedes that he made no objection whatever to such evidence during the trial. For that reason alone he is not entitled to

complain about the matter on appeal; but aside from such reason it is at once apparent that there is no legal ground whatever upon which to base such complaint. ■ The photographs were clearly admissible in evidence (*People* v. *Magsaysay,* 210 Cal. 301 [291 Pac. 582]; *People* v. *Gomez,* 209 Cal. 296 [286 Pac. 998]; *People* v. *Ferlin,* 203 Cal. 587 [265 Pac. 230]; *People* v. *Saenz,* 50 Cal. App. 382 [195 Pac. 442]), as was the declaration of the appellant made at the commencement of the fight tending to show hatred and malice toward the deceased; and the testimony as to previous quarrels was elicited from said witnesses on redirect examination only after appellant had gone into the matter on cross-examination in an effort to show an unfriendly feeling on the part of said witness toward appellant. Therefore, since such testimony was properly admitted, the district attorney was entitled to comment on the same in his argument to the jury. ■ Nor is there any merit in the further contention that the witness Harrison was disqualified from testifying in connection with said photographs as to the appearance of the wounds on Taylor's body merely because he was in the employ of the district attorney's office as an investigator. His testimony was confined to a description of the wounds as he observed them and was not given in the nature of expert testimony.

■ Appellant complains also of the conduct of the district attorney in asking certain leading questions and in commenting in his argument to the jury on the nationality of appellant. No assignment of error was made thereof during the course of the trial, however, and consequently the matter is not open to review on appeal; moreover, we have found nothing in the conduct of the district attorney nor in his argument to the jury to warrant a reversal. The record shows that at all times the trial judge was alert in seeing that the trial was fairly conducted and that appellant was accorded all his legal rights; and from our examination of the case we cannot say that the verdict has resulted in a miscarriage of justice.

The judgment and order are therefore affirmed.

Cashin, J., and Tyler, P. J., concurred.