[Crim. No. 5097. Second Dist., Div. Two. Mar. 15, 1954.]

THE PEOPLE, Respondent, v. DONALD ROBERT EDDY, Appellant.

Minsky & Garber and Albert C. Garber for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Defendant, convicted of robbery, seeks a reversal on the grounds of (1) the insufficiency of the evidence, (2) deprivation of his liberty without due process of law, (3) admission of unlawful evidence, (4) rejection of offered instructions.

## The Evidence Is Sufficient

Two associates of appellant, Dallas and Bernita Blumenthal, entered the Hofgaarden Medical Center, a hospital in Alhambra, on December 7, 1952, near midnight. From the adopted evidence and the verdict, appellant had been treated at the Hofgaarden for an injury on December 1, 1952. He had supplied his confederates with the revolver used in the robbery of the hospital which was in charge of Mr. Cosand, the night watchman. Appellant borrowed the weapon, Exhibit 1, from a friend, one George Hopkins who at the trial identified it as the one which belonged to his father and had been kept in a drawer in the Hopkins home. After appellant had failed to return the pistol within three days, Hopkins could not find appellant but recovered it from Charles Finley, appellant's codefendant. It was the only time George had ever loaned it to appellant.

The robbery occurred according to plan. Mr. Cosand was alone when the Blumenthals entered. As he addressed Bernita, his back was toward Dallas. When he turned around, the man was pointing a gun at him, threatened to kill him if he moved. Dallas forced him to lie on the floor. At that time Cosand observed two other men present. In compliance with the robbers' demands, he told them the money was in the drawer of the desk. They took their victim to the rear and tied him up. On the next day, Miss Harris, the business manager, discovered that the hospital had been robbed of $25.50 in money in addition to 25 cans and bottles of pharmaceuticals, consisting in the main of morphine derivatives.

Shortly after the robbery, on learning that the police were inquiring for him, appellant betook himself to the city of Yuma, Arizona. He was arrested there on March 12, 1953. Lieutenant Miller of the Alhambra police called for him on the following day and returned him to Alhambra. Having

at first declined to discuss the crime before consulting his mother, appellant subsequently talked freely to the officer concerning the Hofgaarden robbery. He stated that while he was there on December 1 to be treated for a lacerated finger, he noticed some narcotics in the cabinets; that thereafter he discussed with Charles Finley the matter of robbing the Medical Center of its narcotics and where they might get a gun for the purpose. Appellant told Finley of a fellow named George from whom he could borrow a gun and that he and Finley called on George Hopkins; that they called on the Blumenthals and discussed with Dallas the robbery of the Hofgaarden; that he refused to accompany them on the adventure but that the Blumenthals, Kenneth, Dallas and Bernita, drove away with Finley in the latter's car; that they returned with some narcotics and hypnotics, two cans of ether and a doctor's pill box; that they divided the booty equally; that he injected sodium pentothal in his arm; that "he was hooked, but he had kicked the habit in Yuma"; that he departed from Alhambra because he knew the police were looking for him.

Lieutenant Miller and a fellow officer played a tape recording they had taken of Charles Finley's statement to the police, and requested appellant to make any corrections. He promptly recognized Finley's voice. In his recording Finley stated he had met appellant and discussed with him the possibilities of robbing the Hofgaarden; that appellant knew where they could obtain a gun; that they visited "George's house" and appellant got the gun; that they went to Blumenthal's place where appellant gave the pistol to them and Finley; that appellant remained there while the Blumenthals and Finley accomplished the robbery, returned and divided the stolen narcotics.

Appellant told the officers that the recording was correct. He admitted borrowing the Hopkins gun and giving it to Finley. Lieutenant Miller examined appellant's arms and found puncture marks.

At the trial appellant claimed he had gone to Yuma for an asthmatic condition, but voluntarily returned with Officer Miller. He declared that he had not been with the Blumenthals at the Hofgaarden and proved he was at home.

The recited facts prove the robbery. It is abundantly shown that appellant was connected with it; that he advised and encouraged the crime by his first conversation with Finley and by loaning him George Hopkins' automatic. He abetted

the act of the Blumenthals and Finley with a guilty intent. (Pen. Code, § 31; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Terman,* 4 Cal.App.2d 345, 347 [40 P.2d 915].) ▪ Whether a defendant, although absent from the scene, aided and abetted the crime of which he is accused is a question of fact for the trial court to be found from all the circumstances in proof. (*People* v. *Wilson,* 135 Cal. 331, 333 [67 P. 322].) ▪ The corpus delicti of the robbery having been established by the night watchman and the business manager of the hospital, appellant's confession to Lieutenant Miller was itself sufficient to connect the prisoner with the felony. (*People* v. *King,* 30 Cal.App.2d 185, 195 [85 P.2d 928].) ▪ The officer's testimony that appellant did not deny Finley's recorded statement but said it was correct is a sufficient proof of appellant's admission of his guilt. (*People* v. *Amaya,* 134 Cal. 531, 536 [66 P. 794]; *People* v. *Bisbines,* 132 Cal.App. 239, 241 [22 P.2d 762].) But we are not forced to rely upon such evidence although it is sufficient. ▪ It was proved that appellant was the author of the crime; had made the discovery of the presence of the narcotics at the Hofgaarden; had suggested the robbery to Finley and then borrowed the automatic pistol to be used on the victim, and later took his share of the loot. Such proof makes appellant a principal. (*People* v. *Dolan,* 38 Cal.App.2d 96, 98 [100 P.2d 791].) ▪ Because the robbers used force in their theft and were armed with a deadly weapon, it was robbery in the first degree. (Pen. Code, §§ 211, 211a.)

▪ Appellant's protest that his oral admissions must be viewed with caution has no application here. That was a rule to be observed by the trial court and it is ineffective on appeal. (Code Civ. Proc., § 2061; *People* v. *Holman,* 72 Cal. App.2d 75, 89 [164 P.2d 297].) ▪ That court is presumed to have observed the rules for trials and to have followed the law. There is no showing that it abused its discretion either in admitting testimony of oral admissions or in applying it to the problem in hand. The ultimate fact of guilt is clearly established by the evidence.

### DUE PROCESS

▪ Appellant assigns as error the conduct of the court in proceeding with the trial immediately following the occurrences which he asserts prevented his having a fair trial. The events complained of are set forth by him substantially

as follows: The trial was set for June 8, 1953, in Department A of the Pasadena Superior Court, the master criminal calendar. Appellant and seven other persons were brought into the courtroom where the venire of the week were present. Amidst that scene, the accused Bernita Blumenthal, then out on bail, was arrested by the sheriff's detail for possessing a deadly weapon which she had intended to pass to her husband, then sitting in the jury box beside appellant. Such arrest created a furor: numerous photographs of the Blumenthals were taken; "all metropolitan newspapers in our Los Angeles area carried feature stories and pictures . . . The Pasadena newspaper carried the story as its headline feature on page 1." From this appellant proceeds to say that "the notoriety and publicity attending the Blumenthal incident prejudiced the jury against the appellant . . . Before any evidence was heard, jurors and prospective jurors were referring to the prisoners as 'a bunch of young gangsters and hoodlums and a menace to the community.' Fuel was added to the flame of excitement created by the court's arraignment and acceptance of the plea of the Blumenthal boys in the presence of the jury and the court's statements and questions in regard to the use of narcotics in the presence of the jury and also reference to their prior records." It is then recited that the court called the case of *People* v. *Bernita Fay Blumenthal* and ordered it to trial, exonerated her bail and fixed it at $10,000. Because of the great excitement in Department A and of the presence of various photographers and reporters and the unusually large number of sheriffs and because every person accused, except appellant, pleaded guilty "in the presence of the jury venire," appellant contends that he was by reason of the atmosphere thus created denied a fair trial.

If the events of the morning in question occurred as recited, it was the duty of appellant then and there to request a continuance or a change of place of trial to a court where he would not suffer the disadvantage of having to select a jury that had witnessed the events of which he complains. He did not do so. On the contrary, he rejected the offer of the prosecuting attorney to request a continuance.

Also, when the jurors were examined on *voir dire*, it was developed that none of them had been influenced by the colloquies, motions, requests, orders, arrests and accusations that had occurred in their presence. Neither did appellant exhaust his peremptory challenges. He was not forced to a

trial at that time, but with evident complacence accepted the situation rather than take a continuance. He is not, therefore, entitled to a reversal on the ground that the jury could not give him a fair trial for the reason that he has not shown that he was prejudiced by the occurrences of June 8; and he accepted the jury knowing the facts. (*People* v. *Stonecifer,* 6 Cal. 405, 411; *People* v. *Ward,* 105 Cal. 335, 338 [38 P. 945]; *People* v. *Cross,* 64 Cal.App. 443, 445 [221 P. 684].) In *People* v. *Ward, supra,* it was, in effect, held that a failure to challenge the jurors for cause constituted a waiver on behalf of defendant to do so. In *People* v. *Stonecifer, supra,* it was held that a party who accepts a juror, knowing him to be disqualified, "is estopped from afterwards availing himself of such disqualification." Appellant and his counsel knew at the time as much about the alleged disqualification of the jurors they accepted as they have ever known.

Moreover, the court took cognizance of the events that had occurred just prior to the examination and acceptance of the jury by telling them that the events concerning the Blumenthals "have no bearing whatsoever on the case which is now before you. The defendant is entitled to be tried by you on the testimony . . . from the witness box, and only from such testimony." The jury are presumed to have understood and obeyed the instruction. (*People* v. *Northey,* 77 Cal. 618, 630, 631 [19 P. 865, 20 P. 129].)

### REFUSAL TO INSTRUCT AS TO SPECIFIC INTENT

The court refused to read Caljic instruction 72C.* Appellant now argues that inasmuch as section 211 of the Penal Code requires that all elements of larceny are essential to the crime of robbery and that since a specific intent to appropriate another's property is one of such elements, the jury should have been directed to find such intent in the accused. But the court gave an instruction† which generously

---

*"Concerning Specific Intent. In the case of certain crimes, it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed. Thus in the crime of robbery, a necessary element is the existence in the mind of the perpetrator of the specific intent to commit larceny, and unless such intent so exists the crime is not committed."

†"Robbery is the felonious taking of personal property of any value in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

"An essential element of the crime of which the defendant is accused

covered the subject and is a full compliance with the law. (*People* v. *Quinn*, 77 Cal.App.2d 734, 738 [176 P.2d 404]; *People* v. *White*, 5 Cal.App. 329, 335 [90 P. 471]; *People* v. *Castile*, 3 Cal.App. 487, 488 [86 P. 746].)

Because 72C of Caljic does not include an instruction as to a particular, specific intent and left it to the court to conjecture as to appellant's wishes, it did not in effect constitute an instruction that the specific intent to commit larceny is necessary to the crime of robbery. Having failed to request a correct instruction on specific intent, and because the court's instruction substantially covered the subject, appellant's assignment on that score is not well taken. (*People* v. *Bletson*, 117 Cal.App.2d 731, 734 [256 P.2d 614]; *People* v. *Cohen*, 99 Cal.App. 515, 517 [278 P. 1056].)

### The Automatic Pistol

 There was no error in the court's receiving in evidence the Mauser automatic pistol. (Exhibit 1.) Mr. Cosand testified that one of the robbers held a gun on him. While he was unable to say that Exhibit 1 was the same weapon used by Blumenthal, yet George Hopkins testified that he loaned the Mauser to appellant; that it was returned by Finley. Appellant told Lieutenant Miller that he and Finley had discussed a robbery of the Hofgaarden in order to get narcotics and where to get a gun; that he could borrow one from one George; that he and Finley visited George Hopkins' home and obtained the automatic he loaned the Blumenthals and told him of the "set-up" at the Hofgaarden. In his recorded statement, Finley said appellant had borrowed the gun from George and gave it to Blumenthal. After such proof, Exhibit 1 was entitled to be admitted as an "item in the sum of the evidence."

The automatic was admitted into evidence without objection in the exercise of a sound discretion. (Code Civ. Proc., § 1954.) While any article "cognizable by the senses" must be identified (*People* v. *Ferns*, 27 Cal.App. 285, 287 [149 P. 802]), yet such identification need not be positive. (*People* v. *Ferdinand*, 194 Cal. 555, 563 [229 P. 341]; *People* v. *Hightower*, 40 Cal.App.2d 102, 107 [104 P.2d 378]; *People*

---

is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully."

v. *Harsch*, 44 Cal.App.2d 572, 576 [112 P.2d 654].) The fact that Cosand did not identify the Mauser as the gun pointed at him is not important in the light of all the other evidence. (See *People* v. *Peete*, 54 Cal.App. 333, 348 [202 P. 51].)

### A Rejected Instruction

Appellant requested the court to read the following instruction to the jury: "When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt."

To give such instruction would have been error. The law does not require that each fact in a chain of circumstances be proved beyond a reasonable doubt. The doctrine of reasonable doubt applies to proof of guilt and not to the proving of each event asserted to be a link in the inculpating chain of incidents. (*People* v. *Mansour*, 103 Cal.App.2d 592, 598 [230 P.2d 52]; *People* v. *Klinkenberg*, 90 Cal.App.2d 608, 632 [204 P.2d 47, 613].)

### Instructions on the Kinds of Evidence

The court instructed the jury on the two kinds of evidence, circumstantial and direct, defined both and advised them that to warrant a conviction, either class of evidence must carry the convincing quality and that if the evidence is susceptible of two interpretations and both appear reasonable, it is the duty of the jury to adopt the interpretation which will prove the innocence of the accused, but in any event to adhere to the practice of making only reasonable deductions from the evidence. Also, the jury was admonished that they were not to find defendant guilty "unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion." Such instructions correctly set forth all the law with respect to circumstantial evidence necessary for their consideration. (*People* v. *Carroll*, 79 Cal.App.2d 146, 149 [179 P.2d 75].)

### The Testimony as to Marks on Appellant's Arm

On rebuttal, Lieutenant Miller testified that on March 14, 1953, he had examined appellant's arms and found "punc-

ture marks'' and ''some breaking down of some of the blood vessels'' and that appellant had told him that he had used heroin but had ''kicked'' the habit at Yuma and that at that time he was using approximately a cap a day. Appellant assigns the admission of such evidence to have been prejudicial. If he thought so, he should have objected to the evidence when offered and not have waited until he reached the reviewing court to announce his grievance.

However, there was no error in allowing such testimony. On direct, the officer had testified to his conversations with appellant, as above narrated, wherein it appeared that after the robbery appellant shared the stolen narcotics with his confederates; was ''hooked''; was using a ''cap'' a day, and ''kicked the habit in Yuma.'' In response thereto, appellant denied that he had ever used narcotics and testified that he had no scars on his arm from the use of narcotics by injection and that he did not exhibit any puncture marks to Officer Miller. Such testimony was supported by testimony of appellant's mother. Thereupon, Lieutenant Miller, without objection on rebuttal gave the testimony now asserted to have been prejudicial. Such testimony was not opinion evidence, but merely a factual description of appellant's arm. As such, it was pertinent proof. (*People* v. *Russo*, 133 Cal.App. 468, 474 [24 P.2d 580]; *People* v. *Gibson*, 106 Cal. 458, 476 [39 P. 864].) ▉ The testimony of Officer Miller on rebuttal relative to narcotics and their use was a mere repetition of what appellant had said to him. It was admitted without objection, and is therefore not the subject to review. (*People* v. *Bigelow*, 104 Cal.App.2d 380, 388 [231 P.2d 881].)

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.