[Crim. No. 7116.   Second Dist., Div. One.   Nov. 29, 1960.]

THE PEOPLE, Respondent, v. J. W. WHITE et al., Defendants ; FRANK GREEN, Appellant.

Frank Green, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. Jones, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

LILLIE, J.—Appellant Green and defendants White, Williams and Morland were convicted by a jury on two counts of first degree robbery, in that on August 28, 1959, armed with a double-barrel shotgun and a .38 caliber revolver, they robbed

Albert Murray of $250 (Count I) and Alva L. Foster of $47 (Count II). Only Green appeals from the judgment. He contends that he was convicted by perjured testimony then known to be such by the prosecution; that he did not participate in the robberies and the evidence is insufficient to sustain a conviction; and that there was no proof of the corpus delicti prior to the introduction of his confession.

The uncontradicted testimony of those present discloses that the crimes were committed as charged in the information. Around 1:30 a. m. on August 28, 1959, Albert Murray, its owner and operator, Alva Lee Foster, a customer, and Mrs. Martin, a barmaid, were in the Blue Goose, a beer parlor, when defendants White, Williams and Morland entered the premises. White walked behind the bar and put a sawed-off shotgun in Murray's side saying, "Take it easy, nobody will be hurt"; he then reached into Murray's pockets and removed a wallet and about $100 in bills. Meanwhile, Morland produced a .38 caliber revolver; Foster asked him what was going on, to which Morland stated, "This is just what you think it is"; he reached into Foster's pocket and removed his billfold containing $47. Morland then pressed the revolver into Elizabeth Martin's side and said: "Don't move and don't utter a sound, this is a stick-up and no one will get hurt." At White's request, Morland went behind the bar and removed $80 cash from the register; Williams took a blackjack from the bar and some money from the barmaid's purse. The three defendants then forced Murray, Foster and Mrs. Martin into the restroom, which defendants locked. Foster looked out of the window and saw the two leaving the premises; he immediately kicked the restroom door open and ran into the street where he observed the only car in sight driving away and in the car, four heads. He identified the automobile as a 1954 or 1955 black Cadillac. The barmaid testified she had previously seen White, Morland and Williams in the Blue Goose.

On September 7, 1959, codefendant White, then a patient in the General Hospital, told police that he, Morland, Williams and appellant Green drove in appellant's Cadillac to the Blue Goose; that appellant drove the car; that Morland and Williams entered the Blue Goose first, then he went in carrying a shotgun he had gotten from appellant and informed those present that they were being held up; and that later the money they received from the robberies was split evenly among all four defendants. Admissions were likewise made by codefendants Williams and Morland. Appellant Green, when ques-

tioned by police, told the officers he had picked up Williams, White and Morland that night; that they then picked up a gun and drove to the Blue Goose; that he stayed in the car while Williams, White and Morland went into the premises and upon their return he drove them away dropping them off at various places; and that while driving away from the Blue Goose, he received from his codefendants about $47 or $48 for his part in the robbery.

At the trial, appellant took the stand and denied any participation in the robbery, that he had ever before seen the shotgun and that he ever drove his codefendants to the Blue Goose or planned with them to commit the robbery; and testified that he gave his statement admitting participation in the robbery to police because if he "didn't cop out to this statement that he (Sergeant Wahlke) wanted me to do, that he (Wahlke) got from defendant White, that he was going to book me for murder and put me in the gas chamber because I had committed a murder."

On rebuttal, appellant's assertions concerning the conduct of law enforcement officers in relation to his confession, were denied.

Appellant argues that because there was insufficient proof of the "full body of the crime" (A.O.B. p. 10), the trial court erred in receiving in evidence his confession of participation in the Blue Goose robberies. It is significant that at no time during the trial was it ever denied by any of the defendants that the robberies actually took place at the Blue Goose on August 28, 1959; the sole contention of each defendant, including appellant, was that he was in no way involved in the commission of the crimes. It, therefore stands in the record uncontradicted that the two robberies charged in the information took place at the time, location and in the manner therein alleged; without question this established "the full body" of the crimes.

Although no witnesses identified appellant as present in the Blue Goose at the time of the robberies, one of the victims testified he saw the three defendants leaving the beer parlor and immediately thereafter observed four persons drive away in the only automobile (Cadillac) leaving the premises. Appellant admitted he owned a 1949 Cadillac. This evidence, although indicative of the number of persons participating in the crime and the make of the automobile used, has little bearing on the identity of the fourth person; the only proof on this issue is appellant's confession to the police that on the

night of the robberies he picked up the three identified defendants in his car, then picked up a gun and drove to the Blue Goose; that he waited in the car while the others entered the premises and committed the robberies; and that he drove them away from the scene during which he received from them his share of the money. ██ The corpus delicti is established when it is proved that a crime has been committed by someone (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752]; *People* v. *McMonigle*, 29 Cal.2d 730 [177 P.2d 745]; *People* v. *Selby*, 198 Cal. 426 [245 P. 426]); the proof need not show the identity of the perpetrator or that the crime was committed by the defendant. (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752]; *People* v. *Amaya*, 40 Cal.2d 70 [251 P.2d 324]; *People* v. *Leary*, 28 Cal.2d 740 [172 P.2d 41].) ██ The corpus delicti of the robberies at the Blue Goose having been independently established by direct evidence consisting of the uncontradicted testimony of eyewitnesses, Albert Murray, Alva L. Foster and Mrs. Martin, there was no error in admitting appellant's extrajudicial confession (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752]), which was itself sufficient to connect him with the commission of the crimes. (*People* v. *Eddy*, 123 Cal.App.2d 826 [268 P.2d 47].)

Although appellant does not here contend that his confession was not freely and voluntarily given, he nevertheless contends he "was not with nor did he participate in said crimes alleged" (A.O.B. p. 6). At the trial he admitted he made the confession; but in his effort to convince the court his statement therein was not true he made vague and somewhat rambling references to statements he claims Sergeant Wahlke made to him concerning a homicide and the fear of a "murder rap" which he asserted caused him to make his false confession to the police. Appellant called Sergeant Wahlke as a witness, by whose testimony he sought to be bound, but the sergeant flatly testified that although he made a statement to appellant concerning a homicide investigation, he did not during the course of interrogation with him make any statement to him that he "would hang a murder rap on him if he did not testify as to the facts White gave him in his confession," or any other such statement. On rebuttal, Sergeant Wahlke was called as a prosecution witness; he denied that he ever threatened appellant that if he did not confess to the robberies he would charge him with murder, although he testified that he originally booked Morland and appellant on suspicion of murder and robbery.

The evidence in connection with the actual taking of the

confession discloses that Sergeant Wahlke, a member of the Sergeant's Headquarters' Detail, was not present when appellant gave his statements to police; that upon defendant's arrest, some time prior to the time appellant's confession was made, the sergeant did talk to him about a homicide investigation; and that Officer Reed, to whom appellant later made his confession, is a police officer assigned to the robbery division of the Los Angeles police department. The trial judge, having heard the testimony, initially found the confession to be free and voluntary thus permitting the introduction of evidence thereof. ■ Voluntariness is mainly a question for the trial court and its determination on conflicting evidence will usually be upheld. (*People* v. *Crooker,* 47 Cal.2d 348 [303 P.2d 753]; *People* v. *Chessman,* 38 Cal.2d 166 [238 P.2d 1001]; *People* v. *Mehaffey,* 32 Cal.2d 535 [197 P.2d 12].) Subsequently the jury, in finding appellant guilty, obviously believed the truth of appellant's confession and rejected his testimony at the trial that his statements to police were false, and impliedly found from the evidence that his confession was properly obtained. (*People* v. *Gonzales,* 24 Cal.2d 870 [151 P.2d 251]; *People* v. *Baldwin,* 42 Cal.2d 858 [270 P.2d 1028]; *People* v. *Lehew,* 209 Cal. 336 [287 P. 337].) We find nothing in the record pointing to error in the admission of appellant's confession upon proof of the corpus delicti of the robberies charged.

Appellant's main complaint seems to be that the trial court erred in admitting into evidence codefendant White's extrajudicial statements to police officers naming appellant as the driver of appellant's Cadillac in the Blue Goose robberies, implicating him as one who had gotten the shotgun for him, and declaring that for his participation in the robberies, appellant received a fourth of the money obtained from the robberies. In addition, appellant asks this court to consider affidavits of James White and Rose Green attached to his opening brief. He also claims that White's statement implicating him to police officers was "perjured" and that White was under the influence of drugs and medicine as a patient in the General Hospital when he made it.

The record shows that at the trial White's extrajudicial statement to the police was offered and received in evidence against defendant White *only* and that the jury was properly admonished and instructed by the court that any evidence of statements made by White was admitted only against White. The four defendants were jointly charged and jointly tried for

the robberies; and there can be no question but that evidence of White's statements to police was relevant as against defendant White in that it tended to implicate him in the robberies.

It is well established that extrajudicial statements of a codefendant, although made in the absence of the other defendants, may be received against the former even though they may tend to incriminate the others, provided the jury is properly admonished and instructed that such evidence can be considered only as against the defendant making the statements. (*People* v. *Roberts*, 40 Cal.2d 483 [254 P.2d 501]; *People* v. *Mullins*, 145 Cal.App.2d 667 [303 P.2d 58].) The trial court properly allowed testimony relative to White's statements to police and properly instructed the jury concerning the same.

Again, whether White's extrajudicial statements were the truth or were made under the influence of drugs as claimed and thus were false statements of what occurred, was for the determination of the trial court in the first instance, and finally for the jury in its determination of White's guilt. Even though White may have been in the hospital at the time and may have previously been under sedation and just regained consciousness after surgery, the confession was admissible, and these factors merely went to the weight to be given to it. (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752]; *People* v. *Harrison*, 41 Cal.2d 216 [258 P.2d 1016]; *People* v. *Amaya*, 40 Cal.2d 70 [251 P.2d 324]; *People* v. *Lehew*, 209 Cal. 336 [287 P. 337].) The jury found against the credibility of White's testimony of the circumstances surrounding his statements to police, and accepted as true the police officers' version of what occurred. But, even so, inasmuch as the evidence was introduced only against and limited to defendant White, appellant is in no position to urge error in its admission. (*People* v. *Chapman*, 93 Cal.App.2d 365 [209 P.2d 121]; cert. den. 338 U.S. 943 [70 S.Ct. 423, 94 L.Ed. 581].) It should be noted that in accord with this rule, in the court below appellant made no objection to the testimony admitting White's statements. (*People* v. *Millum*, 42 Cal.2d 524 [267 P.2d 1039].)

The affidavits of White and Rose Green referred to by appellant in his brief and attached thereto were before neither the trial court nor the jury. As matters entirely outside the record they will not be considered on this appeal. (*People* v. *Collins*, 117 Cal.App.2d 175 [255 P.2d 59]; *People* v. *Ruiz*, 103 Cal.App.2d 146 [229 P.2d 73].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.